**PLEASANT HILLS CHILDREN'S HOME OF THE ASSEMBLIES OF GOD, INC., Appellant,**

v.

**Mary Ann Davis NIDA and Bill Kimble, Appellees.**

No. 18211.

Court of Civil Appeals of Texas, Fort Worth.

April 3, 1980.

Johnson, Johnson & Rothfelder, and Dawson Bryant, Fort Worth, for appellant.

Thomas L. Farris, Fort Worth, for Mary Ann Nida.

Bill Kimble, San Angelo, atty. ad litem.

Don Gladden, Fort Worth, for Bill Kimble.

## OPINION

HUGHES, Justice.

Pleasant Hill Children's Home of the Assemblies of God, Inc. (Home) has appealed a judgment in which it was assessed attorney's fees to pay an attorney ad litem for representation of minor children involved in a custody modification suit. This appeal concerns the authority of a court to appoint such an attorney ad litem and the powers with which he can be vested.

We reform the judgment, and as reformed, we affirm.

Mary Ann Davis Nida and Kenneth Davis were divorced in 1974, at which time Davis was named managing conservator of their three children. Visitation times for Ms. Nida were to be set by the Tarrant County Juvenile Probation Department. This arrangement continued until August, 1977 when Davis was convicted of manslaughter and sentenced to prison. Due to his upcoming incarceration, Davis turned the children over to the Home, because relatives were allegedly unable to take care of them. It appears from the record that neither Davis nor the Home notified or attempted to notify Ms. Nida or the juvenile probation authorities that the children had been placed with the Home. Instead, the Home actively concealed the children from Ms. Nida for approximately two months until it had obtained a relinquishment of parental rights from Davis. It further appears that the Home was aware that it had no legal authority to take custody of the children or act in the manner that it did.

In October, 1977, Ms. Nida initiated proceedings to modify the terms of the original

custody order and she sought to be named managing conservator. On November 3, 1977, Ms. Nida discovered the children were at the Home and visited it. She attempted to secure the release of the children, but her efforts were unsuccessful. The Home asserted its right to the children based on an affidavit executed by Davis when he had left the children there the previous summer. The following day, a representative of the Home obtained a formal affidavit of relinquishment from Davis naming it as managing conservator. On November 14, 1977, the Home intervened in the proceeding brought by Ms. Nida. It sought to terminate Ms. Nida's parent-child relationship with the children and to be named as their managing conservator.

During the custody proceeding Bill Kimble was appointed attorney ad litem to represent the children. The trial court stated in the record that it felt that the civil rights of the children had been violated by the Home, and Kimble was ordered to "bring any law suits which will effectuate the rights of the children." Kimble proceeded to work on the custody proceeding and later filed a federal civil rights lawsuit in his capacity as attorney ad litem. Once the federal suit had been filed, the trial court granted the Home a non-suit and dismissed its intervention in Ms. Nida's custody proceeding in all respects except for costs and attorney ad litem fees.

After dismissal of the Home, a hearing was held on the matter of determining who should pay Kimble's attorney ad litem fees and how much these fees should be. Separable attorneys fees for work performed by Kimble in the federal lawsuit were charged against the Home, as were the separable attorney ad litem fees for services he performed in the custody proceeding. The judgment further allowed $750 attorneys fees in the event the case was appealed to the court of civil appeals and an additional $1,250 in the event the case was appealed to the Supreme Court of Texas. Appropriate findings upon the above were incorporated into the trial court's judgment, and the Home complains of error in two broad areas regarding this award.

The first area of complaint concerns the award of attorney ad litem fees which were charged against the Home as costs in the custody proceeding for work done by Kimble in the federal civil rights suit. The Home contends that it was improper for the trial court to consider any work done on the federal suit in assessing costs in the custody proceeding. The Home also asserts that there is insufficient or no evidence to support the judgment with respect to the attorney ad litem fees charged as costs by the trial court for work done by Kimble in the federal civil rights lawsuit. Finally, regarding the attorney ad litem fees for Kimble's work in federal court, the Home argues that only a federal court would have the authority to grant attorney's fees.

■ Addressing the authority of the trial court in light of the present circumstances, we have reviewed the Family Code in a search for any statutory authority granting the trial court power to appoint an attorney ad litem with the nature and extent of the powers with which Kimble was purportedly vested. Nowhere do we find any such express grant. We have also reviewed other statutes with general application to the district courts of this state, and likewise, find no such grant. We have also conducted a search of relevant case law and have found no such authority granted by judicial construction. Accordingly, we hold that it was improper for the trial court to direct Kimble to institute the federal civil rights suit on behalf of the children as their attorney ad litem, and that it was improper for the trial court to charge the Home for costs of such work performed as an attorney ad litem.

■ There is a possibility, however, that based on the wording of the order directing Kimble to "bring any law suits which will effectuate the rights of the children", the trial court intended to appoint Kimble with

the powers of a guardian ad litem. This is plausible for two reasons. First, the wording of the order naming Kimble an "attorney ad litem" could have been a misnomer and was instead intended to make Kimble a "guardian ad litem". Second, Tex.Family Code Ann. Sec. 11.10(a) (Supp.1980) authorizes a court to appoint a guardian ad litem to represent the interests of minor children in any suit where the termination of the parent-child relationship is sought. In either event, however, even if the trial court had intended to appoint Kimble as a guardian ad litem instead of an attorney ad litem, we still hold that the trial court exceeded its authority in directing Kimble to prosecute the federal civil rights law suit on the children's behalf.

■ A guardian ad litem is the personal representative of an individual subject to a disability who is appointed to protect the interests of the disabled person in any lawsuit where that individual is a party. 30 Tex.Jur.2d *Infants* Sec. 71 (1962). A guardian ad litem is recognized only for specific purposes, and his powers are limited to matters connected with the suit in which he is appointed. *Wright v. Jones*, 52 S.W.2d 247, 251 (Tex.Com.App.1932, holding approved); *American National Bank of Beaumont v. Biggs*, 274 S.W.2d 209, 228–229 (Tex.Civ. App.—Beaumont 1954, writ ref'd n. r. e.). In addition, a guardian ad litem should always be appointed by the court in which the action giving rise to the appointment is pending. Tex.R.Civ.P. 173; 30 Tex.Jur.2d *Infants* Sec. 70 (1962). Based on the foregoing law, we do not feel that it was within the power of the trial court to appoint Kimble as a guardian ad litem and then vest Kimble with the powers it did or to direct Kimble to initiate the federal litigation he was instructed to bring.

■ The guardian ad litem contemplated by Sec. 11.10(a) of the Family Code is intended to represent the interests of minor children with respect to the termination of their parent-child relationship, and no more. We fail to see how the appointment of a guardian ad litem to represent the best interests of children with respect to the termination of their parent-child relationship would create the authority in a court to vest that same guardian with the power to enter federal court and litigate collateral matters, such as a civil rights suit. A guardian can (1) prosecute an appeal from the trial court in which the guardian was appointed, (2) remove, under the proper circumstances, a suit to federal court from state court, and (3) initiate an extraordinary proceeding, such as a writ of mandamus or prohibition, on behalf of a minor for whom the guardian ad litem was appointed to represent. *Annot.*, 115 A.L.R. 571 (1938). However, none of these actions involve the institution of a new lawsuit, in a different court, *grounded on an independent cause of action*. That is the crucial difference in this case, since here the federal civil rights action brought by Kimble sought to vindicate the rights of the children when the Home hid them from their mother. This involved the recovery of a sum of money to compensate the children for this wrong, and in no wise dealt directly with the fitness of the Home or Ms. Nida to act as the managing conservator of the children, a decision which was to be rendered by the trial court in the custody proceeding.[1]

■ Having held that it was improper for the trial court to direct Kimble to prosecute the federal civil rights suit and assess the costs of that work against the Home, we must reform the trial court's judgment to remove from it any charges for the federal court work done by Kimble. The judgment separates costs assessed against the Home into components for the federal and

1. Even though we hold the trial court did not have the authority to appoint Kimble with the power of either an attorney ad litem or a guardian ad litem and then direct him to initiate a federal civil rights suit, it is still possible, under the provisions of the Probate Code, to seek the appointment of a guardian of the estate of the children. Tex.Prob.Code Ann. Sec. 111 (1956). The guardian of the estate would be empowered with authority to initiate such a federal civil rights lawsuit.

trial court work. Testimony at the hearing held for the purpose of setting the attorney ad litem fee is explicit as to how much time Kimble spent on the federal litigation as opposed to the trial court work. From this testimony, which is consistent with the recitations in the judgment, we are able to determine what amount to subtract from the judgment to reform it.

Kimble's testimony indicated that he spent 21½ hours working on the civil rights lawsuit and an additional 8½ hours working on the custody proceeding alone. Kimble further testified that this time was for necessary work, and that a reasonable fee for such work in Tarrant County would be around $50 per hour for the trial court work and approximately $60 to $75 per hour for the federal court work. Based on these figures, the trial court allowed $1,750 to Kimble in attorney ad litem fees and apportioned it approximately one-third to the trial court work and two-thirds to the federal court work. Using $60 per hour, the lowest hourly rate for the federal work, we delete $1,290 from the judgment, leaving the proper costs which the trial court could assess against the Home of $460.

Turning to the second broad area of complaint by the Home, it argues that the attorney ad litem fees, other trial court costs and attorneys fees in the event of appeal were erroneously allowed as they are for work which would be performed after the date when the trial court approved the Home's motion for non-suit. Point of error one complains of trial court costs and attorney ad litem fees for both the federal and trial court work.[2]

Point of error six complains of the $750 awarded in the event of an appeal to the court of civil appeals, and point of error seven complains of the $1,250 awarded in the event of an appeal to the Supreme Court of Texas. We overrule these complaints.

The gist of the Home's complaints is it is being charged for costs which were incurred after it was "dismissed" from the suit. This is not a correct assertion. In its order of dismissal of August 3, 1977, the trial court dismissed the Home's intervention *subject to* costs and attorneys fees. A hearing was held to determine those costs, and as a result of the hearing, a judgment was rendered on December 26, 1978 which assessed specific costs against the Home. Due to the terms of the order of dismissal of August 3, it was no more than an interlocutory order since it contemplated further hearings on the amount of costs which were not fully determined and which were not disposed of until rendition of judgment on December 26. *Affolter v. Affolter*, 389 S.W.2d 742, 744 (Tex.Civ.App.—Corpus Christi 1965, no writ). Since the order of dismissal was only an interlocutory decree, the Home can not complain that it is being charged for costs which were incurred after it had taken its non-suit. Costs can be assessed against a non-successful party to a suit, Tex.R.Civ.P. 131, and it is proper to assess such charges until that party is no longer a party to the suit. In the present case, the Home was still a party to the custody proceeding through the date of the final judgment even though the trial court had entered a temporary order dismissing its intervention.

On its argument regarding costs of appeal, the Home first contends that the award is for services not performed or which may not be performed. We find this to be without merit. Every award for attorneys fees on appeal must be incorporated into a judgment or be waived so by necessity, the award of such fees must be made before the appellate work has been performed or an appeal could never become perfected. In addition, the judgment in this case is worded in such a manner that

---

2. [In light of our holding above, further discussion concerning these costs will be limited to costs assessed in the trial court other than attorney ad litem fees and those attorney ad litem fees charged as costs which were not removed from the judgment through reformation.]

the Home is not obligated to pay for any appellate work unless an appeal is pursued to the court of civil appeals or later to the Supreme Court of Texas. Therefore, the Home is protected in the event that no appeal is taken by Ms. Nida, and can not complain about being charged with fees for work which may never be performed. On the appeal reasonable attorneys fees for the work of an attorney in this case would be substantially identical whether or not the Home might obtain the ruling we have made relative to attorneys' fees in federal court. There is no occasion to reverse the provisions of the trial court's judgment relative thereto on the ground the Home escaped a part of the liability decreed below.

■ The Home also contends that the award of appellate attorneys fees is for services which would be rendered after the date when the Home, as intervenor, had been dismissed from and was no longer a party to the suit. We feel that it is well settled that once a party invokes the jurisdiction of a court in a case where attorneys fees can be awarded, if the party is required to pay attorneys fees, the award can include attorneys fees for any appeal, provided there is a proper predicate. Such a predicate was laid here.

■ At the October, 1978, hearing on costs and attorneys fees, Kimble testified as to the amount of time which would be necessary to appeal to the court of civil appeals and the Supreme Court of Texas and what a reasonable fee would be for such work. The judgment of the trial court was in accord with this. There is sufficient evidence to support the award of the attorney ad litem fees for the appeal.

In conclusion, we sustain point of error four complaining of the appointment of Kimble as attorney ad litem and assessing attorneys fees for his federal court work as costs in the trial court custody proceedings. We do not reach points of error two, three and five, since the subject matter of the judgment complained of in these points has been removed through reformation. All other points of error are overruled.

The judgment of the trial court is reformed to delete from it $1,290 in costs assessed against the Home, and, as so reformed, is affirmed. Costs of appeal are to be borne one-third by Ms. Nida and two-thirds by the Home.