CELANESE CHEMICAL COMPANY, INC., n/k/a Hoechst Celanese Chemical Group, Inc., Appellant,

v.

Jimmy Lee BURLESON, Individually and as Next Friend of Catherine Nickole Burleson, Roni Jo Burleson, and Jimmy Lee Burleson, Jr., Appellees.

No. 01–90–00896–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 24, 1991.

Rehearing Denied Dec. 12, 1991.

---

Ben A. Donnell, Houston, L. Nelson Hall, Kathryn F. Green, Corpus Christi, for appellant.

W. Douglas Mathews, James Patrick Smith, Houston, for appellees.

Before HUGHES, COHEN and PRICE[1], JJ.

## OPINION

HUGHES, Justice.

Celanese Chemical Company, Inc. (Celanese), appeals from a judgment ordering it to pay a fee of $100,000 to the attorney ad litem of the minor plaintiffs, the Burleson children appellees.

On January 7, 1987, the plaintiff and appellee, Jimmy Lee Burleson, an employee of Mundy Contractors, Inc., was injured while working as a pipefitter at the Celanese Bayport Marine Terminal. Burleson sued Celanese for negligence, seeking damages for his injuries, physical impairment, loss of enjoyment of life, medical expenses, and loss of capacity to work. The Burleson children sought damages for loss of their father's consortium. On January 4, 1990, almost three years after the suit was filed, the trial court granted Burleson's motion to appoint an attorney ad litem for the Burleson children.

On June 11, 1990, the trial court entered judgment, according to the agreement of the parties, finding the agreement to be reasonable, fair, just, and in the best interest of the appellees. The judgment award-

1. The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

ed $1,325,341 to Burleson and $24,817 to Jimmy Lee Burleson, Jr., $24,926 to Catherine Nickole Burleson, and $24,916 to Roni Jo Burleson, his children.[2] The awards to the Burleson children were free of all costs and fees. The parties were unable to agree on the fee to be awarded the attorney ad litem.

At the bench trial on the issue of the attorney ad litem fee, the ad litem testified as follows:

(1) He is a licensed attorney, has been practicing for 24 years, and his area of specialty is personal injury and family law.

(2) Because the settlement was a structured one, and annuities would be purchased for the Burleson children (presently aged two to five years), his office would need to keep open files on the children for periods of 13 to 16 years to receive and review data and answer questions. He also spent time getting quotes on the annuities.

(3) His work on the case involved reviewing the pleadings, reading the depositions and deposition summaries, and participating in discovery. He reviewed the financial data on the Burleson family to devise a structured settlement to meet its various needs.

(4) He was involved in the "hotly" contested issues of discovery compliance, concerning whether sanctions should be entered against Celanese.

(5) For the previous three months, he had attended numerous pretrial hearings on the case.

(6) He was involved in discussions with the intervenor workers' compensation carrier, determining how much would be paid to it.

(7) The hours he spent on the case to date totalled 150.

(8) It was his opinion, in accordance with the code of professional responsibility and considering the complexity of the case, the experience of the lawyer, the issues involved, and the period of time involved in the future for handling the case, that a fee of $100,000 was just, fair, and reasonable.

Burleson's attorney also testified in support of the ad litem, stating that he agreed with the ad litem's testimony, that he would have thought the hours were greater than 150, and that the ad litem made a substantial and crucial contribution to the outcome of the case.

The Celanese attorney did not cross-examine either the ad litem or Burleson's attorney, nor did he introduce any evidence concerning the ad litem's fee request. He did argue that the requested fee was unreasonable given the number of work hours (150) testified to by the ad litem.

The trial court awarded the ad litem his requested $100,000, stating, "All right. Under all the circumstances and the totality of everything, I'll go ahead with the $100,000."

In its motion for new trial, Celanese objected to the ad litem's fee as manifestly too large, contending there was insufficient evidence to support the award and that the amount of the award was against the great weight and preponderance of the evidence. Celanese introduced no evidence. In his response, the attorney ad litem stated that the Burleson children's cause of action for loss of parental consortium, even though their father's injuries were nonfatal, was not one judicially recognized in Texas. He argued that he was successful in convincing the trial court to deny Celanese's special exceptions to the cause of action until the Texas Supreme Court ruled on a similar issue in *Vaughn v. Reagan*, 784 S.W.2d 88 (Tex.App.—Houston [14th Dist.] 1989),

**2.** The testimony of Burleson indicated that the sum of $524,999 was taken to buy a one-time premium annuity for Burleson to pay him a monthly sum over his lifetime. One-time payment annuities for the Burleson children of $24,926, $24,916, and $24,817 were purchased. Annual payments to each child would not begin until the child reached age 18 and would continue to each for a period of seven years. The cumulative payments to each child would equal, respectively, $112,000, $135,000, and $143,000. Out of the remaining settlement sum to Burleson, a workers' compensation lien of $92,381 was satisfied, as well as two other unspecified medical liens, unspecified bank loans and interest, plaintiff's attorney fees, and costs.

*aff'd in part and rev'd in part,* 804 S.W.2d 463 (Tex.1990).[3] He contended that the overruling of its special exceptions caused Celanese to reevaluate the case and raised the potential value of the case. The ad litem also tendered to the trial court a computer listing of the time he had spent on the case. That printout indicated that the ad litem's law firm had charged a total of $41,521 in fees (based on a total of lawyer and clerk hours of 180.7 to the date of the motion for new trial hearing) to the Burleson children's account and disbursed $603.30 in expenses. The trial court denied the motion for new trial.

Celanese does not contest the appointment of the ad litem or that it is the party required to pay an ad litem fee. However, in two points of error, Celanese contends that the trial court abused its discretion by awarding an excessive fee to the attorney ad litem and that there was no evidence or insufficient evidence to support such an excessive fee.

Although referred to as an "attorney ad litem," the ad litem was appointed under TEX.R.CIV.P. 173, which requires a "guardian ad litem" to be appointed for a minor where the minor's next friend represents him or her in a suit and appears to have an adverse interest. Celanese does not complain about the discrepancy in titles. Moreover, this Court has previously held that an improper designation of an ad litem is not fatal. *Sheehan v. Southern Pac. Co.,* 422 S.W.2d 948, 949 (Tex.Civ.App.—Houston [1st Dist.] 1967, writ ref'd n.r.e.); *see also Phillips Petroleum Co. v. Welch,* 702 S.W.2d 672, 674 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.) (improper designation as attorney ad litem rather than guardian ad litem by trial court is not of controlling import). Under rule 173, a guardian ad litem is paid a "reasonable fee" for his services.

■ The amount of compensation awarded a guardian ad litem lies within the discretion of the trial court and will not be overturned unless a clear abuse of discretion is apparent from the record. *Simon v. York Crane & Rigging Co.,* 739 S.W.2d

793, 794–95 (Tex.1987); *Smith v. Smith,* 720 S.W.2d 586, 591 (Tex.App.—Houston [1st Dist.] 1986, no writ); *Welch,* 702 S.W.2d at 674; *Poston v. Poston,* 572 S.W.2d 800, 802–803 (Tex.Civ.App.—Houston [14th Dist.] 1978, no writ).

■ Celanese did not request, and the trial court did not make, findings of fact and conclusions of law. Therefore, we presume the trial court made all necessary findings to support the judgment. *Lemons v. EMW Mfg. Co.,* 747 S.W.2d 372, 373 (Tex.1988); *Burnett v. Motyka,* 610 S.W.2d 735, 736 (Tex.1980). However, the legal and factual sufficiency of the implied findings may be challenged on appeal, and the standard of review will be the same one applied to jury findings and a trial court's findings of fact. *Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989); *Burnett,* 610 S.W.2d at 736.

■ When an appellant challenges the legal sufficiency of an adverse finding to an issue on which he did not have the burden of proof, we consider only the evidence and inferences, when viewed in their most favorable light, that tend to support the finding and disregard all others to the contrary. *Davis v. City of San Antonio,* 752 S.W.2d 518, 522 (Tex.1988). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex. 1988); *In re King's Estate,* 150 Tex. 662, 664, 244 S.W.2d 660, 661 (1951). When an appellant challenges the factual sufficiency of the evidence to support an adverse finding, we consider and weigh all the evidence, both that in support of and contrary to the challenged finding. *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex.1986). We must uphold the finding, unless we decide the finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *In re King's Estate,* 150 Tex. at 664–65, 244 S.W.2d at 661; *M.J. Sheridan & Son Co. v. Seminole Pipeline Co.,* 731 S.W.2d 620,

**3.** The supreme court issued its decision on December 19, 1990.

623 (Tex.App.—Houston [1st Dist.] 1987, no writ).

■ The Texas Supreme Court has stated that the discretion of the trial court in setting an ad litem fee is not unbridled. *Simon*, 739 S.W.2d at 794. It has also stated that the same factors used to determine the reasonableness of attorney fees are controlling, and that those factors include the difficulty and complexity of the case, the amount of time spent by the attorney, the benefit derived by the client, and the skill and experience reasonably needed to perform. *Id.; see also Alford v. Whaley*, 794 S.W.2d 920, 925 (Tex.App.—Houston [1st Dist.] 1990, no writ).

■ The ad litem testified that he was an experienced lawyer, that the case was complex, that he had spent 150 hours to the date of judgment on the case, and that $100,000 was a just, fair, and reasonable fee for his services. Burleson's attorney testified that he agreed with this testimony. The testimony of an interested witness may establish a fact as a matter of law only if the testimony could be readily contradicted if untrue and is clear, direct, and positive and there are no circumstances tending to discredit or impeach it. *Lofton v. Texas Brine Corp.*, 777 S.W.2d 384, 386 (Tex.1989). The ad litem's testimony that a $100,000 fee was reasonable is contradicted by his testimony that he spent 150 hours working on the case and that his firm's internal billing attributed $41,521 in fees to the case. However, even if the testimony of the ad litem does not support the legal sufficiency of the trial court's implied finding of reasonableness of the fee, the testimony of Burleson's counsel does. We find there is more than a scintilla of evidence to support the reasonableness of the ad litem's fee.

In reviewing the factual sufficiency of the evidence on the reasonableness of the ad litem's fee, we begin by examining what other Texas courts have said regarding reasonable fees. In *Vaughn v. Gunter*, 458 S.W.2d 523, 528 (Tex.Civ.App.—Dallas 1970, writ ref'd n.r.e.), the court found the evidence supported the reasonableness of the ad litem fee where the fee awarded was $10,000, the firm had worked a total of 166 hours, and the litigation involved a trust worth in excess of $2,000,000. In *Welch*, 702 S.W.2d at 675, the Fourteenth Court of Appeals found the evidence supported an ad litem award of $166,667, where the total settlement was $5,150,000; the minor received $1,000,000 free of costs, expenses, and fees; attorneys for both sides testified that the settlement would not have been accomplished but for the ad litem's efforts; and the ad litem's statement documented 449 hours of work. In *Brown & Root U.S.A., Inc. v. Trevino*, 802 S.W.2d 13, 15–16 (Tex.App.—El Paso 1990, no writ), the court found that an ad litem award of $125,000 ($115,000 in fees and $10,000 in expenses) for 500 hours of work, equaling $230 per hour was excessive.

The ad litem and Burleson's attorney testified that the $100,000 ad litem fee was reasonable. In opposition to this, we have the ad litem's internal firm invoice indicating that the actual fee incurred was $41,521 and his testimony that the actual hours expended were 150 to the day of judgment. The fee awarded by the trial court divided by the actual hours expended equals an hourly rate of $666.

The settlement agreement shows that the Burleson children were awarded $74,659, approximately $25,000 less than the ad litem fee, but that they will enjoy no benefit from this until the years 2003, 2005, and 2006. While it is true that they will enjoy future benefits totalling $112,000, $135,000, and $143,000, which are far in excess of the present dollars awarded, it is the present value that must be considered. Had the children actually received the $74,659 and were it invested in their behalf, we would consider only the benefit from the principal. Moreover, the ad litem fee is paid in the present.

Although the cause of action, loss of parental consortium without parental death, asserted by the ad litem was a novel one only recently recognized by the Texas Supreme Court, the services of the ad litem did not involve complex matters. There was no trial, and the ad litem filed no trial brief. Most of the ad litem's activities

consisted of reviewing the file and conferring with the court and the other parties. Additionally, the ad litem attended a motion for preferential setting hearing, two motion for sanctions hearings, and the final settlement hearing, filed an answer to Celanese's special exceptions, and drafted pleadings regarding sanctions to be imposed.

We acknowledge the testimony of the ad litem that he would need to keep files open on the Burleson children for periods of 13 to 16 years in order to receive and review data and answer questions. This activity is not part of an ad litem's duty. Assuming that such service accounts for the difference between the firm's internal invoice and the $100,000 fee awarded, the ad litem would be receiving for future, possibly contingent, and unspecified services a greater sum than for his ad litem services.

When we consider the hours spent by the ad litem, the complexity of the case, and the present benefit to the client reflected in the record before us, we find that the evidence is factually insufficient to support the ad litem's fee and that the trial court abused its discretion in awarding the $100,000 fee. We sustain Celanese's first point of error. We overrule Celanese's second point of error relating to the legal sufficiency of the evidence, and sustain the point of error as it pertains to the factual sufficiency of the evidence. Because of our disposition of the points of error, it is unnecessary for us to address the cross-point of the appellees.

In *Alford*, this Court held that when a record showed a total of 90 hours for trial work and an hourly rate of $150, the trial court abused its discretion in awarding a $25,000 ad litem fee. 794 S.W.2d at 926. We reformed the judgment to set the ad litem fee at $13,500. *Id.* at 926. We noted that an appellate court has the authority to draw on the common knowledge of the justices of the court and their experience as lawyers and judges to view the matter in light of the testimony, the record, and the amount in controversy. *Id.* at 925 (citing *Dawson v. Garcia*, 666 S.W.2d 254, 264 (Tex.App.—Dallas 1984, no writ) and *Gold-*

*en v. Murphy*, 611 S.W.2d 914, 916 (Tex. Civ.App.—Houston [14th Dist.] 1981, no writ)).

Accordingly, we reverse the judgment on the attorney ad litem fee and render judgment that the ad litem recover from Celanese the amount of $41,521 plus $603.30 in expenses.

COHEN, Justice, dissenting.

I agree that an award of $100,000 in attorney ad litem fees was excessive, but I disagree with the majority concerning the amount of the excess and the standard of review. I believe the record shows there is no evidence to support an award of more than $90,000; thus, I would sustain appellant's no evidence contention in point of error number two to that extent. Next, I would determine whether there was factually sufficient evidence to support an award of $90,000. Because the evidence is not so weak as to make a $90,000 award manifestly unjust, I would overrule the remainder of points of error one and two and hold that the trial court did not abuse its discretion in awarding a fee of $90,000.

*The Standard of Review*

I would apply the standard of review set out in *Larson v. Cactus Utility Co.*, 730 S.W.2d 640, 642 (Tex.1987):

If a court of appeals holds that there is no evidence to support a damages verdict, it should render a take-nothing judgment as to that amount.

*Legal Sufficiency—No Evidence Contentions*

The attorney ad litem, James Patrick Smith, sought to justify his fee in part by claiming that he would have to maintain files, and to communicate with and on behalf of the minors, for the next 13 to 16 years, until they reached their majorities. In response to the trial court's question concerning his responsibilities during this time, Mr. Smith testified he would "make sure that the (annuity) contract is performed." When the trial court asked how much less the fee would be without such future services, Mr. Smith replied, "proba-

bly about $10,000." The majority holds that no future activity is required of an attorney ad litem, and Mr. Smith cites no authority to the contrary. Moreover, there is no evidence the annuity contracts will be breached. If they are, the beneficiaries, who will then be adults, may select any attorney they desire at that time; they are not required to retain Smith. Finally, any attorney the beneficiaries retain will be entitled to attorney's fees upon winning a suit for breach of contract. Thus, I agree that, as a matter of law, Mr. Smith was not entitled to any fees today for enforcing the annuity contracts in the future. Under *Larson v. Cactus Utility Co.*, I would render a take-nothing judgment as to that amount, $10,000.

*Factual Sufficiency*

The remaining issue is whether the evidence supporting a fee of $90,000 is so weak that the award is manifestly unjust.

There were two hearings on fees. At the settlement hearing on June 11, 1990, Mr. Smith and the attorney for the adult plaintiffs, Mr. Matthews, testified in support of a $100,000 award. Appellants asked no questions and presented no evidence. At the hearing on appellants' motion for new trial on August 13, Smith and Matthews presented affidavits in support of the $100,-000 fee. Again, appellants presented no evidence. Appellants did not request findings of fact or conclusions of law. Consequently, we must uphold the trial court's award (or any part of it) on any basis that is supported by evidence. *Lemons v. EMW Mfg. Co.*, 747 S.W.2d 372, 373 (Tex.1988).

The record would support the following findings of fact: 1) Without the risk or the trauma of a trial, Mr. Smith convinced appellants to pay his clients almost $75,000 for a cause of action that did not exist under Texas law; 2) during the 34 months of litigation before Smith entered the case, appellants offered nothing; five months later, they paid $1.4 million; 3) Smith attained or could have attained more than $75,000 for the minors, but wisely bargained to attribute the excess to their parents, the adult plaintiffs Jimmy and Michelle Burleson, if he could influence them to forego cash and take a structured settlement. This was in the minors' best interest because the family had no current wage earner and Mrs. Burleson had to provide permanent, full-time home care to the youngest child, who suffered from a disabling congenital heart defect; 4) but for Mr. Smith, the case would not have settled and the minors would have undergone the delay, risk, and agitation of a trial and possibly an appeal; 5) but for Mr. Smith, the minors would have received nothing, which was their due under existing case law; 6) but for Mr. Smith's efforts pertaining to sanctions, the adult plaintiffs may have received nothing or much less from a trial or a settlement; 7) but for Mr. Smith, the adult plaintiffs would have taken their proceeds from trial or settlement not in a structured settlement, but in cash, even though they lacked the ability to preserve the money for the 13 to 16 years needed to support the minor children.

In short, the trial court could have concluded that Mr. Smith was entitled to an approximately 117% bonus over the amount on his internal invoice ($41,521) because he got $75,000 for clients who were legally entitled to nothing, and then forced the parents, over whom he had no direct control, to invest their money in a way that would avoid it being wasted and instead preserve it for many years into the future to provide for the minors' support.[1]

---

1. This would be supported by the affidavit of Douglas Matthews, counsel for Jimmy and Michelle Burleson, who testified as follows:

   The Burleson children received a settlement amount that was not directly recognized by an appellate decision prior to the time settlement was reached in the Burleson case. It was unique that these minor children received a settlement for the loss of parental consortium due to the injuries suffered by their father which were non-fatal in nature.

   In allocating the division of the settlement proceeds between the adult plaintiff (Jimmy Lee Burleson, Sr.) and the minor plaintiffs, it should be pointed out that the third child, Jimmy Lee Burleson, Jr., was born after his father had received his debilitating, permanent injuries. This child was born with a congenital heart defect which then required that Mrs. Burleson, who previously had been employed, to quit her job due to the necessity of having to provide daily care for this con-

The evidence related in the footnote supports the trial court's award. We need not consider the contrary evidence because there is none.

There is no question that a fee of $90,000 is high. It amounts to $600 per hour, more than I would have awarded and more than double the highest figure the majority of this panel (comprised of two former trial judges) would have awarded. Moreover, the same trial judge was recently found to have abused his discretion by awarding excessive attorney ad litem fees in another case. *Brown and Root U.S.A., Inc. v. Trevino*, 802 S.W.2d 13, 15–16 (Tex.App.— El Paso 1990, no writ). Plainly, this system, like all others, can be abused.

genitally impaired child. This child still requires such a level of care. It was the position of the Attorney Ad Litem that, even though a portion of the settlement amount was to be awarded to the Burleson minor children, the inability of both parents to work *obviously required that a larger share than usual of the settlement proceeds should be distributed to Jimmy Lee Burleson Sr. in order to be able to feed, cloth and educate the children.*

James Patrick Smith was instrumental in helping me to persuade the adult plaintiffs to place most of their settlement proceeds in a so-called structured settlement. Mr. Smith was able to use his influence with Jimmy Lee Burleson and his wife to convince them that he would not approve of them receiving Jimmy Lee Burleson Sr.'s portion of the settlement amount primarily in cash. He took this position because he believed both parents were unable to work. While he believed that the parents needed a large portion of the total recovery to pay the regular, on-going living expenses of the entire family, Mr. Smith wanted to make sure that a structured settlement was in place to allow them to receive regular monthly payments which could then pay the monthly *living expenses of the entire family,* including the Burleson children. These regular monthly payments would then provide for the children's needs on a guaranteed basis. James Patrick Smith was instrumental in helping me to utilize the threat of sanctions against the Celanese Defendants in order to achieve what I felt was a fair, just and reasonable settlement for all of the plaintiffs. He and I cooperated in our approach to using the threat of sanctions against the Celanese Defendants to bring them to the bargaining table to discuss a meaningful settlement in this case. Prior to his appearance in this case, absolutely no meaningful settlement discussions had taken place.

It is my opinion that his reputation and standing in the legal community, along with his ability as a trial lawyer, were of significant benefit in causing the Celanese Defendants to participate in and ultimately conclude a successful settlement for the Plaintiffs.

*James Patrick Smith and I consulted on this* case on almost a daily basis during certain stages of the litigation and his availability, assistance, and efforts were of unmeasurable benefit in helping me to be able to successful-ly conclude this case on behalf of the plaintiffs.

Further, Mr. Smith testified as follows:

[I]t was not easy to have Jimmy Burleson and his wife Michelle agree to take the structure because they like many people when faced with the alternative of receiving cash or monthly amount initially took the position that they wanted to receive what I felt under the circumstances and based upon their financial background and their educational history, I felt that that was not in their best interest not only of them but also the three children *who they have a duty to support.* So I used all of the influence that I could and finally told both of these parents that I would not approve any settlement in this case whatsoever even though we would agree that we would take the $75,000 and purchase the college annuities, I would not approve the settlement unless they agreed to the purchase of a structure and so that's what we were finally able to do.

I'm convinced that that amount of money that goes into that household now each month is an amount that is sufficient to take care of the needs of each of these people but that is why the structure was made the way it was....

I would remind the court that on multiple Monday mornings we had this issue of whether or not sanctions should be taken against the Celanese defendants for this "loss of an investigatory file" by an investigator who had 15 years experience wherein Celanese claimed that this investigation done as a matter of hours after Jimmy Lee Burleson was injured had suddenly got lost. I participated insofar as the records that the Court has a great deal in that matter. It was my belief that the issue of sanctions was an important one insofar as the rights of these three children to seek a recovery and as I pointed out in my response the fact that on June the 11th the Court entered a finding of no sanctions [in the final judgment] really was only done because we thought that we had reached a settlement on all issues that were presented to the Court that morning. But I would like for the record to show that in my opinion that the finding by *the Court of no sanctions against the Celanese* defendants in no way means that issue would not probably have been resolved on a different matter had we proceeded to trial in this case.

Despite these concerns, I would uphold $90,000 of this particular award for three reasons. First, the record shows evidence of outstanding lawyering by Mr. Smith that led to an exceptional result for his clients. Second, although attorneys ad litem do not risk their entire fee on the outcome of a case, as do plaintiff's attorneys, we must presume that lesser skill and a lesser result would have led to a lower fee because trial courts are required to consider the attorney's skill and the result obtained in setting fees. *Alford v. Whaley,* 794 S.W.2d 920, 925 (Tex.App.—Houston [1st Dist.] 1990, no writ). Thus, Mr. Smith was entitled to at least some "risk premium" over his usual fee ($41,521) because when he accepted the case, he could not have known how much time it would take, what his fee would be, how the judge would evaluate his efforts, or what result he would attain. He could not even have been sure that the judge who appointed him would be the one to set his fee, given the uncertainties of elections, of life, and of the length of our cases. Finally, perhaps most important, trial judges sometimes appoint outstanding attorneys to represent minor plaintiffs in serious cases in order to help a less able attorney for the parents compete against highly skilled defense counsel. Such appointments make litigation more fair. They serve the public interest in keeping helpless minors from unnecessarily becoming public charges. The attorney ad litem is sometimes more responsible for obtaining a good result for all the plaintiffs than is the parents' counsel, even though uninjured minors will, as in this case, always receive less than a physically injured adult plaintiff. Trial judges need discretion to compensate such counsel well in appropriate cases in order to induce them to serve. The trial judge, if asked, could have made conclusions of law in accordance with these observations. If he had, I believe we would be bound by existing standards of review to uphold this award, even though every judge on this panel would have awarded less.

I would reform the judgment by reducing it to $90,000 and affirm.

