BROWNSVILLE–VALLEY REGIONAL MEDICAL CENTER, INC., d/b/a Valley Regional Medical Center, Appellant,

v.

Ernesto GAMEZ, Appellee.

No. 13–92–289–CV.

Court of Appeals of Texas, Corpus Christi.

Jan. 20, 1994.

Rehearing Overruled March 24, 1994.

Thomas F. Nye, Brin & Brin, Corpus Christi, for appellant.

Ernesto Gamez, Jr., Paul Wilson, R. Brian Hunsaker, Law Offices of Ernesto Gamez, Jr., Brownsville, for appellee.

Before GILBERTO HINOJOSA, DORSEY, and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

Brownsville–Valley Regional Medical Center, appellant, challenges ⅚ of a $40,000 attorney *ad litem* fee awarded to Ernesto Gamez, appellee. We affirm.

Diana Diaz (three years of age) and her parents sued Brownsville–Valley Regional Medical Center, Inc., and Rogelio Lopez, M.D., for alleged wrongful acts which have left Diana in a vegetative state, requiring constant medical supervision for the remainder of her life. Before trial, the parties negotiated a settlement agreement in which the defendants would create a trust on behalf of Diana with a lump sum of $614,389.27 to provide for Diana's future medical needs. Gamez, who was appointed attorney *ad litem* on January 16, 1992, after settlement negotiations were complete, approved the settlement agreement on Diana's behalf.

From Diana's award, the plaintiffs' attorneys deducted ⅓, or $204,769.42, as attorneys' fees, leaving Diana with a net settlement of $409,359,52. The defendants agreed that the hospital would pay ⅚ and the doctor would pay ⅙ of court costs, including *ad litem* fees.

The trial court heard evidence on January 21, 1992, regarding the amount of *ad litem* fees to be awarded. Gamez stated to Diana's mother during the settlement agreement hearing that, "for the entire life of the trust or the child, [you may] come to my office and I will assist you in any form or fashion necessary for the best interest of [Diana.]" Gamez asked the court for a minimum of $100 per hour, stating that he had worked fifteen-to-twenty hours on the case, and that he anticipated working twenty hours a year for the next twenty-two years, which constituted the life of the trust. Jack Skaggs, attorney for the doctor, stated to the court that he had no opinion "one way or the other" on the *ad litem* fees, except that they be "reasonable in relation to the amount that has been provided *and that will likely be provided in the future....*" Omar Garza, attorney for the hospital, stated to the court that, "Naturally, if there's going to be *any future time, that may be considered as well.*" Tom Rhodes, the plaintiff's attorney, was present and stated to the court that Gamez had disclosed his intent to remain involved with Diana's care and decisions for the rest of her life. The court then awarded Gamez $40,000 in attorney *ad litem* fees.

Subsequently, in the same hearing, Gamez testified that he had been a licensed attorney

for eleven years and that, generally, in personal injury cases, he received 20–40% of his client's recovery as compensation, and, in divorce cases, he received $100 to $200 per hour as compensation. Gamez again testified that he anticipated spending twenty hours a year for the next twenty-two years, or the life of the trust. He stated that an award of $46,000 [sic] would be well under his customary rate of $150 per hour for twenty hours a year for the next twenty-two years. Gamez testified that, from the time he was appointed attorney *ad litem*, he had read the settlement agreement and the background material for the lawsuit, discussed liability with the attorneys for the hospital and the doctor, contacted several banks to find the best rates for Diana's trust, discussed the case with Diana's parents one morning, and discussed the case extensively with Mr. Rhodes, all of which amounted to approximately fifteen to twenty hours. Gamez had no documentation to account for this time. He was not asking to be reimbursed for any out-of-pocket expenses.

Appellant argued in the hearing on motion for new trial 1) that pursuant to *Celanese Chem. Co. v. Burleson*, 821 S.W.2d 257, 262 (Tex.App.—Houston [1st Dist.] 1991, no writ), an attorney *ad litem* need not keep open files on clients after approval of the settlement agreement with the court and, 2) that Gamez' continued involvement with the Diaz case would only duplicate the bank trustee's duties. The trial court denied appellant's motion for new trial, but, on its own motion, modified the judgment to order the attorney *ad litem* to perform the following duties: 1) to oversee the trust agreement for Diana, 2) to file a total update of the child's trust with the District Clerk of Cameron County every six months, and 3) to maintain an updated and accurate accounting of the trust to explain trust expenditures to Diana and her parents.

In appellant's first and fourth points of error, appellant argues that the trial court erred as a matter of law when it awarded future attorney *ad litem* fees, even though both Mr. Garza and Mr. Skaggs, attorneys for the defendants, indicated to the trial court that they anticipated that Gamez' attorney *ad litem* fee would include future legal services.

In *Burleson*, when reviewing the factual sufficiency of the evidence supporting the trial court's award of *ad litem* fees, the court stated that keeping files open in order to receive and review data and answer questions with regard to minors' annuities was not part of an *ad litem*'s duty. *Burleson*, 821 S.W.2d at 262. We distinguish this case from *Burleson*, however, because, in this case, the trial court, in the final judgment, ordered Gamez to conduct specific future services for twenty-two years. In *Burleson*, the attorney *ad litem* was planning to offer future services which the trial court had not ordered.

 The trial court does not have unbridled discretion to order an attorney *ad litem* to perform legal services. In *Pleasant Hills Children's Home v. Nida*, the trial court ordered an attorney *ad litem* appointed in a suit affecting the parent-child relationship to "bring any law suits which will effectuate the rights of the children." *Pleasant Hills Children's Home v. Nida*, 596 S.W.2d 947, 950 (Tex.Civ.App.—Fort Worth 1980, no writ). The appellate court held that the trial court did not have the power to appoint an attorney *ad litem* "with the nature and extent of the powers with which [the *ad litem*] was purportedly vested." *Id.* at 950. *Nida* is distinguishable from this case, because the trial court only ordered Gamez to continue to supervise the same lawsuit. We hold that an attorney *ad litem* may recover for future legal services when the trial court has specifically assigned future duties regarding the same lawsuit. Appellant's first and fourth points of error are overruled.

 In its third and sixth points of error, appellant asserts that the trial court abused its discretion in modifying the judgment on its own motion to specifically order Gamez to perform certain future duties. The trial court ordered Gamez to oversee the trust, file an update every six months with the district court, and maintain an accounting to explain expenditures to Diana's parents. The Texas Rules of Civil Procedure provide that, if a motion for new trial has been timely filed, the trial court has plenary power to

modify a judgment "until thirty days after all such timely-filed motions are overruled, either by a written and signed order or by operation of law, whichever occurs first."[1] TEX.R.CIV.P. 329b(e).

In this case, the judgment was signed on January 21, 1992, and appellant filed its motion for new trial on February 20, 1992. On April 6, 1992, the same day that the motion for new trial would have been overruled by operation of law, the trial court signed the order overruling appellant's motion for new trial and modified the judgment. Accordingly, the trial court modified the judgment within its plenary power, which did not expire until thirty days after April 6, 1992.

Furthermore, the trial court did not add these specific orders without cause. Gamez and Rhodes had indicated that Gamez would remain intimately involved with Diana's trust, and Gamez had provided the court a copy of a letter from him to the bank trustee, stating that he intended to remain active in the affairs of the trust. The trial court's modification of the judgment merely committed to writing what had already been discussed, and further ordered that Gamez report to the district court. We do not find that the trial court abused its discretion in modifying the judgment on its own motion. Appellant's third and sixth points of error are overruled.

■ Appellant asserts in its second, fifth and seventh points of error that the trial court abused its discretion in awarding attorney *ad litem* fees in the amount of $40,000. In reviewing the award of attorney *ad litem* fees, the standard of review is whether the trial court abused its discretion. *Simon v. York Crane & Rigging Co., Inc.*, 739 S.W.2d 793, 794 (Tex.1987); *Valley Coca-Cola Bottling Co. v. Molina*, 818 S.W.2d 146, 148 (Tex.App.—Corpus Christi 1991, writ denied). Absent evidence illustrating a clear abuse of discretion, a reviewing court will not set aside an allowance. *Simon*, 739 S.W.2d at 794. However, the discretion of the trial court in setting *ad litem* fees is not unbridled. *Id.* The test for determining if the trial court abused its discretion is whether the trial court acted arbitrarily and unreasonably, without reference to any guiding rules or principles. *Molina*, 818 S.W.2d at 148; *Alford v. Whaley*, 794 S.W.2d 920, 925 (Tex.App.—Houston [1st Dist.] 1990, no writ); *Smith v. Smith*, 720 S.W.2d 586, 591 (Tex.App.—Houston [1st Dist.] 1986, no writ); *Dawson v. Garcia*, 666 S.W.2d 254, 264 (Tex.App.—Dallas 1984, no writ).

The discretion of the trial court in setting attorneys' fees is generally guided by the following factors: 1) the time and labor involved, 2) the nature and complexities of the case, 3) the amount of money or the value of the property or interest involved, 4) the extent of the responsibilities assumed by the attorney, 5) whether other employment is lost by the attorney because of the undertaking, 6) the benefits resulting to the client from the services, 7) the contingency or certainty of compensation, and 8) whether the employment is casual or for an established or constant client. *Simon*, 739 S.W.2d at 794; *Molina*, 818 S.W.2d at 148; *Alford*, 794 S.W.2d at 925. In *Molina*, this Court considered a guardian's future duties relating to the supervision of minors' trusts in its determination of whether the trial court had abused its discretion. *Molina*, 818 S.W.2d at 149. However, the court in *Burleson*, when reviewing the factual sufficiency of the evidence supporting the trial court's award of *ad litem* fees, stated that keeping files open in order to receive and review data and answer questions with regard to minors' annuities was not part of an *ad litem*'s duty. *Burleson*, 821 S.W.2d at 262.

■ In determining whether an award of attorney *ad litem* fees is excessive, an appellate court has the authority, when looking at the entire record, to draw on the common knowledge of the justices of the court and their experience as lawyers and judges and to view the matter in the light of the testimony, the record and amount in controversy. *Dawson*, 666 S.W.2d at 264.

■ We now apply the factors enunciated in *Simon*, 739 S.W.2d at 794, *Molina*, 818

---

1. A motion for new trial is overruled by operation of law seventy-five days after judgment is signed if it has not already been determined by a signed written order. TEX.R.CIV.P. 329b(c).

S.W.2d at 149, and *Alford,* 794 S.W.2d at 925, to determine whether the trial court acted without reference to any guiding rules or principles. Considering past and future time and labor involved with this case, Gamez has worked approximately twenty hours in the past and will work approximately twenty hours a year for the next twenty-two years, which totals 460 hours. Charging his minimum rate of $100 per hour, Gamez' compensation for 460 hours of work would be $46,-000. The trial court's award of $40,000 is well within this amount.

The extent of responsibilities assumed by Gamez more than justifies the fee. Diana Diaz and her parents are, in essence, "an established or constant client." Gamez testified that he intended to remain involved with the case for twenty-two years, and the trial court ordered Gamez to perform specific future duties. Although Gamez testified that he intended to spend twenty hours a year on the Diana Diaz case, the actual amount of time he will spend is, in reality, an unknown. While the amount of time Gamez spends may ultimately amount to less than twenty hours a year, he also very well may spend more than twenty hours a year.

Having considered the factors enunciated in *Simon,* 739 S.W.2d at 794, *Molina,* 818 S.W.2d at 149, and *Alford,* 794 S.W.2d at 925, we find that the trial court did not act without reference to any guiding rules or principles, and that the trial court has not abused its discretion. Appellant's second, fifth and seventh points of error are overruled.

The judgment of the trial court is AFFIRMED.

### Dissenting opinion by DORSEY, J.

DORSEY, Justice, dissenting.

The question presented here is whether the trial court may impose duties on a guardian ad litem to extend long after the judgment has become final, set appropriate fees for these future services, and tax those fees as costs of court against the defendants. I would hold the authority of the guardian ad litem lapsed with the jurisdiction of the court over the cause and the trial court abused its discretion assessing fees for the guardian for services to be performed after the appointment had terminated. Accordingly, I respectfully dissent.

*Ad litem* means "for the suit." A guardian ad litem is a guardian appointed to prosecute or defend a suit on behalf of a party incapacitated by infancy or otherwise. BLACK'S LAW DICTIONARY 43 (6th ed. 1990). The general rule is that a guardian ad litem's interest is limited to matters connected with a suit in which he is appointed, and his appointment ends when the judgment becomes final. *Durham v. Barrow,* 600 S.W.2d 756, 761 (Tex.1980).

The authority of the trial judge to appoint the ad litem in the present case stems from TEX.R.CIV.P. 173, which provides that when a minor, lunatic, or other non-compos mentis is "a party to a suit" and is represented by a guardian or next friend who appears to have an interest adverse to him, the court shall appoint a guardian ad litem for him. The appointment may continue through appeal, but when the judgment becomes final, the representation ends. *Barrow v. Durham,* 574 S.W.2d 857, 860 (Tex.Civ.App.—Corpus Christi, 1978), *aff'd,* 600 S.W.2d 756 (Tex. 1980). The guardian ad litem no longer has authority to act for minor, because when the judgment is final the minor is no longer a party to the action. I would hold the trial court did not have authority to continue the appointment of the ad litem beyond the entry of the final judgment to perform legal services for the minor.

The future legal services that are to be performed by the ad litem are the rationale for the fee allowed him and assessed as costs against the defendant. The services anticipated by the judgment relate to overseeing the trust, and advising the client as to his rights in it. However, any future legal services should be a matter of contract between the parties, and should be paid for by the client or from his estate.

The concept of a guardian ad litem is to provide a temporary guardianship for a specific purpose when there is a conflict of interest between the natural guardian and the ward. It is to protect the minor or incompetent from his natural guardian when their

interests clash, or have a potential of being adverse. However, when the lawsuit has ended with the minor's recovery being placed in trust or other protection, there is no need for the minor to have his own advocate vis a vis his parents, paid for by the defendant in the lawsuit that is over.

I would reform the judgment of the court below, deleting the imposition of all duties on the guardian ad litem after the judgment becomes final, and remand to the trial court the determination of reasonable attorney's fees to the date the judgment became final.