BROWNSVILLE–VALLEY REGIONAL
MEDICAL CENTER, INC., d/b/a Valley
Regional Medical Center, Petitioners,

v.

Ernesto GAMEZ, Respondent.

No. 94–0357.

Supreme Court of Texas.

Argued Dec. 15, 1994.

Decided March 2, 1995.

Thomas F. Nye, Corpus Christi, for petitioners.

R. Brian Hunsaker, Ernesto Gamez, Jr., Brownsville, for respondent.

GONZALEZ, Justice, delivered the opinion of the court in which all Justices join.

In this case we determine whether a guardian ad litem can be appointed to render services long after the litigation is concluded and awarded compensation for such services. The court of appeals, with one justice dissenting, affirmed the trial court's judgment awarding ad litem fees for services to be performed over the next twenty-two years. 871 S.W.2d 781. We hold that it is an abuse of discretion for a trial court to award ad litem fees for services performed after resolution of the conflict of interest which gave rise to the appointment. Accordingly, we reverse the judgment of the court of appeals, and modify the trial court's judgment to delete that portion of the ad litem's fee award representing payment for services performed after the trial court rendered judgment, and as modified, affirm.

## I.

Angel and Josefina Diaz, individually and as next friends of their three-year-old daughter, Diana, sued Brownsville–Valley Regional Medical Center (Valley Regional) and Dr. Rogelio Lopez for medical malpractice. The Diazes alleged that the negligent acts of Valley Regional and Dr. Lopez have left Diana in a vegetative condition in which she will require constant medical supervision for the rest of her life.

The parties settled the case before trial for a total of $1.2 million, which was to be apportioned between Diana's parents and a trust created for Diana's benefit. After settlement negotiations were complete, the trial court appointed Ernesto Gamez as Diana's guardian ad litem to represent her interests in the settlement.

Gamez approved the settlement, which awarded $790,640.50 to Diana's parents and $409,359.50 to a modified Chapter 142 trust created for Diana's use and benefit. *See* Tex.Prop.Code § 142.005.[1] The defendants agreed that Valley Regional would pay five-sixths of court costs, including ad litem fees, and Dr. Lopez would pay the remaining one-sixth.

At the settlement hearing, the trial court heard evidence regarding guardian ad litem fees. Gamez testified that he had spent between fifteen and twenty hours on the case. Gamez further stated that he anticipated spending fifteen to twenty hours a year for the next twenty-two years, the duration of the trust, advising Diana's parents and overseeing the activities of the trustee.

Gamez requested an award of $46,000.00, an amount that, at twenty hours per year for the next twenty-two years, would be well under his customary fee of $150.00 per hour. Gamez also agreed that $100.00 per hour was a minimum reasonable and customary fee. The trial court rendered judgment incorporating the terms of the settlement agreement and awarding Gamez $40,000.00 in ad litem fees.[2]

Valley Regional filed a motion for new trial and a motion to modify, correct and reform the judgment, complaining of the lack of evidence to support the ad litem fee award. In support of the motions, Valley Regional offered the deposition of Carol Bailey, an attorney and former chief trust officer and

---

1. Chapter 142 of the Property Code provides several mechanisms for the investment and management of funds recovered in suits brought by next friends, one of which is a trust formed pursuant to Section 142.005.

2. The trial court's order does not specify what portion of the $40,000.00 represents payment for post-lawsuit services. Valley Regional concedes, however, that Gamez spent 20 hours working on the settlement and that his fee was a *maximum* of $150.00 per hour. Gamez's award for the twenty hours of work already performed at a fee of $150.00 per hour would be $3,000.00. Valley Regional is contesting only $37,000.00 of the $40,000.00, the amount awarded for post-lawsuit services.

senior vice-president of the trust department for Citizens State Bank in Corpus Christi. Bailey testified that there was no need for ad litem participation in the management of a Chapter 142 trust, and that the ad litem would merely duplicate the work of the trustee.

In response to Valley Regional's motions, Gamez offered two letters. The first was a letter Gamez sent to the Diazes. It stated that he would like to meet with them every ninety days to discuss the trust, and that he would provide any legal services necessary to promote Diana's best interests. Gamez also introduced a letter he sent to the trustee, Mercantile Bank of Brownsville, Texas, requesting the trust officer to inform Gamez of all transactions concerning the trust.

After a hearing, the trial court denied Valley Regional's motions. On its own motion, however, the trial court modified the judgment to order Gamez to oversee the trust agreement for Diana, file an update of the trust with the district clerk every six months, and maintain an updated and accurate accounting of the trust in order to explain trust expenditures "to the child, in the future, and to the parents of the child."

A divided panel of the court of appeals affirmed the trial court's award of fees for future ad litem services, holding that an "ad litem may recover for future legal services when the trial court has specifically assigned future duties regarding the same lawsuit." 871 S.W.2d at 783.[3] The dissenting justice argued that the guardian ad litem's appointment terminated when the trial court's judgment became final, and that the trial court abused its discretion in assessing fees for services performed after the appointment ended. *Id.* at 785 (Dorsey, J., dissenting).

## II.

Although both the trial court and the parties have interchangeably referred to Gamez as an **attorney** ad litem and a **guardian** ad litem, the basis for his appointment is Texas Rule of Civil Procedure 173.[4] Rule 173 vests the trial court with the authority to appoint a **guardian** ad litem for a minor who is a party to a suit when the minor "is represented by a next friend or a guardian who appears to the court to have an interest adverse to such minor." TEX.R.CIV.P. 173.

██ The trial court can appoint a guardian ad litem pursuant to Rule 173 only when there is a conflict of interest between the minor and next friend. *McGough v. First Court of Appeals*, 842 S.W.2d 637, 640 (Tex. 1992); *Davenport v. Garcia*, 834 S.W.2d 4, 24 (Tex.1992); *Newman v. King*, 433 S.W.2d 420, 421 (Tex.1968). When the conflict of interest no longer exists, the trial court should remove the guardian ad litem. In *Davenport*, the trial court dismissed the guardian ad litem because the next friends had settled their claims, and only the minors' claims remained. 834 S.W.2d at 6. We held that the ad litem's removal was appropriate because the trial court found there was no longer a conflict of interest between the minor and the next friend. *Id.* at 24; *see also McGough*, 842 S.W.2d at 640 (holding that evidence of a continuing conflict of interest between minor and her next friends was one reason to uphold the appointment of a second guardian ad litem); *Davenport*, 834 S.W.2d at 44 (Hecht, J., concurring) ("It makes little sense that a guardian ad litem cannot be appointed without a conflict of interests between the ward and his next friend or guardian, but may continue to serve after the conflict disappears.").

3. This is the second published opinion in which the Corpus Christi Court of Appeals has affirmed an award of fees for future services. In *Valley Coca–Cola Bottling Co. v. Molina*, 818 S.W.2d 146, 149 (Tex.App.—Corpus Christi 1991, writ denied), the court held that fee awards of 15% to 18% of the minor plaintiffs' total recoveries were reasonable, in part because the guardians ad litem would have continuing duties to supervise the minors' trusts, which would require an uncertain amount of future time and effort. However, another court has held that future services

are not part of an ad litem's duties. *Celanese Chem. Co. v. Burleson*, 821 S.W.2d 257, 262 (Tex.App.—Houston [1st Dist.] 1991, no writ).

4. The trial court's improper designation of the ad litem "is not of controlling import." *Phillips Petroleum Co. v. Welch*, 702 S.W.2d 672, 674 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.); *see also Sheehan v. Southern Pac. Co.*, 422 S.W.2d 948, 949 (Tex.Civ.App.—Houston [1st Dist.] 1967, writ ref'd n.r.e.).

Rule 173 authorizes the court to award an ad litem a reasonable fee for his or her services. The amount of compensation awarded to the ad litem lies within the sound discretion of the trial court. *Simon v. York Crane & Rigging Co.*, 739 S.W.2d 793, 794 (Tex.1987). A reviewing court will not overturn a fee award absent evidence showing a clear abuse of discretion. *Id.* The issue before us is whether the trial court abused its discretion by awarding Gamez ad litem fees for post-litigation services. We hold that the trial court abused its discretion.

### III.

The term "ad litem" means "for the suit." BLACK'S LAW DICTIONARY 43 (6th ed. 1990). The representation of an ad litem is limited to matters related to the suit for which he or she is appointed. *Durham v. Barrow,* 600 S.W.2d 756, 761 (Tex.1980). A trial court can appoint an ad litem **during litigation** to protect the interests of the minor when a conflict of interests arises. *McGough,* 842 S.W.2d at 640. In the case before us, there is no dispute regarding the settlement or the proper method of managing Diana's recovery, nor is there any evidence that a conflict of interest continued to exist between Diana and her parents after Diana's settlement was placed in the trust. Thus, upon rendering final judgment and approving the trust agreement, the trial court should have dismissed Gamez. In failing to do so, the trial court in effect impermissibly appointed Gamez "general counsel" for Diana and her parents during the life of the trust.

### IV.

Gamez contends that his continued service is necessary even though the lawsuit is over because the trustee of Diana's trust will not monitor matters outside the realm of the investment portfolio, such as Diana's health care, personal needs, and general well-being. We disagree. Gamez's services are neither authorized by Rule 173, nor are they necessary to protect Diana's interests.[5] The Family Code charges the parents with the duty to support the child, which specifically includes providing clothing, food, shelter, medical care, and education. TEX.FAM. CODE § 12.04(3). Thus, according to the statute, it is the Diazes who have the responsibility to ensure Diana's needs are met, not Gamez. Furthermore, the trustee is under a duty, pursuant to the trust agreement and the Trust Code, to ensure that Diana's health, support, education, and maintenance needs are met. *See* TEX.PROP.CODE § 113.051. The trial court's order requiring Gamez to oversee the trust is unnecessary because if the trustee fails to administer the trust according to its terms, or if it does so in a negligent manner, it will be liable to Diana for breach of its fiduciary duty. *See Jewett v. Capital Nat'l Bank,* 618 S.W.2d 109, 112 (Tex.Civ.App.—Waco 1981, writ ref'd n.r.e.). In sum, the post-litigation services Gamez was to provide are duplicative of the duties imposed on the Diazes and the trustee to ensure Diana's well-being.

If at some point in the future a guardianship becomes necessary to protect Diana's interests, the Probate Code is the appropriate mechanism for appointment of a guardian, not the Rules of Civil Procedure. Through the Probate Code, the Legislature has enacted a comprehensive scheme for the appointment and continuous judicial supervision of a guardian. TEX.PROB.CODE §§ 601–892 (Supp.1995). If a guardianship is necessary, the Probate Code requires the court to name the parents the natural guardians of the minor. *Id.* § 676(b). In this case, the trial court ordered Gamez to oversee the activities of the trustee and provide Diana and her parents with legal advice for the

---

5. We recently appointed a task force to examine judicial appointments. The task force identified five problem areas that arise in connection with appointments. First, the appointees and the judiciary often lack the information and training necessary to enable the appointment process to operate efficiently. Second, trial courts sometimes make appointments unnecessarily. Third, some appointments "involve impropriety or the appearance of impropriety." Fourth, the compensation system for some types of appointees is subject to abuse. Finally, current law regarding the scope of an appointee's duties does not always provide sufficient guidance for the appointees and the courts. REPORT OF THE SUPREME COURT TASK FORCE TO EXAMINE APPOINTMENTS BY THE JUDICIARY 5–6 (Mar. 1, 1993).

next twenty-two years. In doing so, the trial court effectively appointed a guardian for Diana without complying with the requirements of the Probate Code. Consequently, it failed to place Gamez under control of the legislative scheme created to govern guardians.

## V.

Because we hold that a guardian ad litem may not recover fees for services rendered after resolution of the conflict for which he or she is appointed, we reverse the judgment of the court of appeals and modify the trial court's judgment to delete that portion of the award which represents payment for post-lawsuit services. We render judgment for Gamez in the amount of $3,000.00, representing services performed as of the date of the trial court's judgment, and relieve him of the post-litigation duties imposed by the trial court in this case. As modified, we affirm the trial court's judgment. Five-sixths of the $3,000.00 is taxed against Valley–Regional, and the remaining one-sixth is taxed against Rogelio Lopez, M.D in accordance with the agreement of the parties.