Maria JOCSON, M.D. and Woman'S Hospital of Texas, Inc., Appellants,

v.

Joe CRABB, Appellee.

No. 01–01–01242–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 2, 2003.

4. U.S. CONST. amend. IV.

5. TEX. CONST. art. I, § 9.

Charles David Brown, Nancy J. Locke, Fulbright & Jaworski L.L.P., Richard A. Sheehy, Sheehy, Serpe & Ware, Martin L. Kern, Houston, TX, for Appellant.

Helen A. Cassidy, Storey, Moore & McCally, Robert Alan York, David W. Holman, Holman & Keeling, P.C., Houston, TX, for Appellee.

Panel consists of Justice TAFT,

ALCALA, and PRICE *.

## OPINION

FRANK C. PRICE, Justice (Assigned).

In three issues, Maria Jocson, M.D. and Woman's Hospital of Texas, Inc. argue the trial court abused its discretion when it awarded Joe Crabb $120,077.75 in guardian ad litem fees in the underlying medical malpractice suit. We affirm.

## Background

On April 30, 1998, Adrienne and David Draper sued the hospital, Dr. Jocson, and other healthcare providers for damages allegedly sustained as a result of medical malpractice during the birth of their daughter. They claimed that their daughter suffered brain damage during the delivery. On December 12, 1998, after approximately eight months of pretrial activity, the trial court appointed Joe Crabb as the guardian ad litem for the Draper's daughter. On December 30, John F. Irwin, M.D., who is not a party to this appeal and who bears no responsibility under the trial court's order for payment of the guardian ad litem fees, filed a motion for reconsideration of the appointment of the guardian ad litem. The trial court denied the motion. No other party presented any further complaint regarding the appointment of Crabb as the guardian ad litem.

On October 1, 2001, after the Drapers reached a confidential settlement with all the defendants in the case,[1] the trial court conducted a hearing on Crabb's request for guardian ad litem fees. The only two witnesses who testified during the hearing were Crabb and Jimmy Williamson, the Drapers' trial attorney.

Crabb testified that he has been a licensed attorney for more than 30 years and has served as a guardian ad litem between 30 and 50 times. He testified this was an extremely complex medical malpractice case because "the medical professionals differed in their opinion." Crabb submitted a 42–page fee invoice which reflected 585.75 hours of work billed at $200 an hour and totaled $117,150. In addition, Crabb testified he had independently and without leave of court sought legal counsel regarding the creation of a trust for the Draper's child. Crabb sought $2,927.75 to pay the firm of Crain, Caton & James for their services concerning the trust. Finally, Crabb asked the trial court for the following appellate fees: $30,000 in the event that an unsuccessful appeal is filed and pursued in the court of appeals, $10,000 in the event that a petition for review is filed and denied in the Texas Supreme Court, and $15,000 in the event that the Supreme Court grants a petition for review and affirms the award. The trial court awarded Crabb all the fees he submitted.

## Ad Litem Fees

In three issues, Jocson and the hospital argue (1) the trial court abused its discretion in the award of ad litem fees to Crabb for his work in the trial court, (2) there is legally and factually insufficient evidence to support the award of ad litem fees to Crabb, and (3) the trial court abused its discretion in the award of ad litem fees to Crabb on appeal.

### Standard of Review

 Rule 173 vests the trial court with the authority to appoint a guardian ad litem for a minor who is a party to a suit when the minor "is represented by a next

---

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. The settlement is final, and the Drapers are not parties to this appeal.

friend or guardian who appears to the court to have an interest adverse to such minor." Tex.R. Civ. P. 173. Rule 173 authorizes the trial court to award an ad litem a reasonable fee for his or her services. The amount of compensation awarded to an ad litem lies within the sound discretion of the trial court. *Simon v. York Crane & Rigging Co.*, 739 S.W.2d 793, 794 (Tex.1987). We may not overturn a fee award absent evidence showing a clear abuse of discretion. *Id.* The review includes, but is not limited to, the legal and factual sufficiency of the evidence. *Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex. 1999).

■ A trial court can appoint a guardian ad litem pursuant to Rule 173 only when there is a conflict of interest between the next friend and the minor. *Davenport v. Garcia*, 834 S.W.2d 4, 24 (Tex.1992). When the conflict of interest no longer exists, the trial court should remove the ad litem. *Brownsville–Valley Regional Medical Center, Inc. v. Gamez*, 894 S.W.2d 753, 755 (Tex.1995).

■ A guardian ad litem is not a party to the suit, but (1) may "conduct an investigation to the extent that the guardian ad litem considers necessary to determine the best interest of the child for whom the guardian is appointed"; (2) is entitled to "attend all legal proceedings in the case but may not call or question a witness unless the ad litem is a licensed attorney"; and (3) is entitled to "testify in court ... regarding the recommendations concerning the actions that the guardian ad litem considers to be in the best interest of the child...." Tex. Fam.Code Ann. §§ 107.002(a)(1), (c)(4), (c)(6) (Vernon Supp.2002); *Samara v. Samara*, 52 S.W.3d 455, 459 (Tex.App.-Houston [1st Dist.] 2001, pet. denied). A guardian ad litem is not entitled to compensation for work that exceeds proper responsibilities.

*See Marshall Investigation & Sec. Agency v. Whitaker*, 962 S.W.2d 62, 62–63 (Tex. App.-Houston [1st Dist.] 1997, no pet.); *Roark v. Mother Frances Hosp.*, 862 S.W.2d 643, 647 (Tex.App.-Tyler 1993, writ denied) (holding guardian ad litem who exceeds role and assumes duties of plaintiff's attorney is not entitled to extra compensation).

**Trial**

In their first two issues, Jocson and the hospital argue the trial court abused its discretion in the award of ad litem fees to Crabb for work done in the trial court because there was no evidence or insufficient evidence to support the award. They assert that there was no conflict between the interests of the minor child and the parents that justified Crabb's work or fees in this case; Crabb was essentially doing work that was the responsibility of the Drapers' lawyer; and the factors set forth in Disciplinary Rule 1.04 do not support the award of ad litem fees.

### *No Conflict*

The sole circumstance in which a guardian ad litem can be appointed is when a minor "is represented by a next friend or guardian who appears to the courts to have an interest adverse to such minor." Tex.R. Civ. P. 173; *see Davenport*, 834 S.W.2d at 24. Once the conflict between the ward and her guardian ends, however, the need for an ad litem ends. *Gamez*, 894 S.W.2d at 756; *J.D. Abrams, Inc. v. McIver*, 966 S.W.2d 87, 97 (Tex.App.-Houston [1st Dist.] 1998, pet. denied).

During the hearing, both Crabb and Williamson were questioned about the Drapers' loyalty and devotion to their daughter. Both testified that the Drapers were good, loving parents who wanted the best for their daughter. Crabb was repeatedly asked what conflict warranted his

assignment in the case. His response was always, "money." Crabb testified that "anytime you have money involved there is a conflict of interest. No matter how noble someone may be, money taints everything."

Crabb could not recall the details, but according to his records, he attended more than 50 depositions,[2] he read at least 10 more, and he attended more than 10 hearings. When asked, Crabb could not recite a single conflict that arose during his involvement in the case. In fact, Crabb was asked if he agreed that his role should be limited to times where there is a conflict between the parents and the child, and Crabb responded,

> Counselor, I do not know when you can say that terrorists are going [to] attack the World Trade Center and I do not know when a conflict is going to develop. There is always the potential for a conflict to develop, and my appointment was to protect the interest of the child.

Jocson and the hospital contend this perceived "conflict" was not sufficient to justify Crabb's large fee under Rule 173, and "the scope of Crabb's work should have been limited to a dispute over the division of money."

The testimony during the fee hearing established that the interests of the parents, the child, and the plaintiffs' attorney were identical on all issues of liability and damages. Despite the fact Crabb found no conflict, Crabb, who charges a minimum of .25 of an hour to review any correspondence, charged $19,000 for reviewing 378 letters. He charged $5,250 for reviewing 105 deposition notices. He charged $35,900 for attending more than 50 depositions.[3]

This, while meeting with the family members for a total of 3.5 non-mediation hours and speaking with the family members five times on the telephone for 1.25 hours.

■ After a thorough investigation, a guardian ad litem has a duty to evaluate: (i) the damages suffered by the minor, (ii) the adequacy of the settlement, (iii) the proposed apportionment of settlement proceeds among the interested parties, (iv) the proposed manner of disbursement of the settlement proceeds, and (v) the amount of attorneys' fees charged by the minor's attorney. *Byrd v. Woodruff,* 891 S.W.2d 689, 707 (Tex.App.-Dallas 1994, writ dism'd by agr.).

We find it surprising that it appears from the invoices that Crabb spent hundreds of hours attending hearings and depositions, but spent relatively little time on the responsibilities of a guardian. In fact, on the cover sheet for his fee invoice, Crabb specifically states that he does "not sign settlement releases nor (sic) uniform qualified assignments and releases. The Plaintiffs are represented by Mr. Williamson and he will and is acting as the Plaintiffs' counsel. Mr. Williamson represents the interests of Leila Draper as well as those of her parents." Furthermore, there were two mediations in this case, and Crabb only attended one of them in person. Regardless, the trial court heard this testimony and found Crabb's fees were appropriate.

### Plaintiff's Lawyer

Jocson and the hospital contend Crabb was "duplicating work that was being done by Williamson," the Drapers' attorney, and they argue there is "no other explanation as to why he would have reviewed every

---

2. Jocson and the hospital routinely objected to Crabb's presence at the depositions but did not request the trial court to rule on their objections.

3. Crabb testified it was necessary for him to attend the depositions in person to evaluate each witness's demeanor.

piece of paper, and attended over 50 depositions, knowing that neither the documents nor the testimony of the witnesses was relevant to any conflict between the child and her parents." Again, the trial court heard this testimony and found the fees were appropriate.

### Disciplinary Rule

■ Generally, trial courts employ the same factors used to determine the reasonableness of attorney's fees to ascertain an appropriate guardian ad litem fee. *Garcia v. Martinez*, 988 S.W.2d 219, 222 (Tex. 1999). These factors include:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.1997) (*quoting* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.04 *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 1998)).

Here, Crabb testified that (1) the case was extremely complex because "the medical professionals differed in their opinion,"

(2) he turned down other work so he could attend the depositions, (3) his $200 an hour fee was reasonable, (4) there was a confidential settlement in the multi-million dollar range that was a "very fine result," (5) there were time limitations imposed on him because he did not know if the case was going to settle, (6) he had no professional relationship with the client or the plaintiffs' attorney, (7) the plaintiffs' lawyer had a fine reputation, and (8) the fee was not contingent.

Jocson and the hospital argued that (1) the primary dispute was over the time and labor required to perform Crabb's ad litem duties because Crabb's involvement was far in excess of what was required and expected of him as an ad litem, (2) this case impacted Crabb's ability to conduct other business simply because he attended unnecessary depositions, (3) Jocson and the hospital do not take issue with Crabb's hourly rate, (4) while there was a substantial settlement, there is no evidence Crabb's involvement contributed to the settlement amount, (5) Crabb could hardly claim there were time limitations imposed by the claimants because he only had separate meetings with them for a total of about 3.5 hours, (6) Crabb had no prior relationship with the Drapers, (7) there was no evidence Crabb had special experience to handle this case as an ad litem, and (8) Crabb's award was not contingent upon his success.

The gravamen of Jocson's and the hospital's complaint is that Crabb simply spent too much time on this case, attended too many depositions and hearings, and spent too much time reviewing correspondence. The record indicates the defendants were certainly aware of the time Crabb was spending on the case because they saw him at the depositions and hearings. They even objected to his presence at most of the depositions. Importantly though, they

never sought a ruling from the trial court on their objections. They continued to object, but never pursued the objections. Without commenting on the propriety of Crabb's presence at the depositions and hearings, we find the defendants' current complaints unpersuasive given their failure to seek a timely ruling from the trial court.

█ Jocson and the hospital also complain that the time Crabb spent reviewing correspondence was excessive. Admittedly, the defendants did not know how much time was going to be assessed for review of documents until they received the invoice. However, absent a more thorough record, we cannot comment on the propriety of this portion of Crabb's fees. The defendants did not make a formal request for Crabb's fees other than in the form of a subpoena duces tecum pursuant to a deposition that was quashed. We cannot review this portion of the invoice without a detailed record of the correspondence referenced in Crabb's bill.

Without taking a position on the appropriateness of the fees, we hold it is the responsibility of the complaining parties to pursue their objections with the trial court. We overrule issues one and two.

**Appeal**

█ In issue three, Jocson and the hospital argue Crabb is not entitled to recover ad litem fees on appeal for defending the award of ad litem fees in the trial court.

█ A guardian ad litem may not recover fees for services rendered after resolution of the conflict for which he was appointed. *Gamez*, 894 S.W.2d at 757. The term "ad litem" means "for the suit." BLACK'S LAW DICTIONARY 43 (6th ed.1990).

The representation of an ad litem is limited to matters related to the suit for which he is appointed. *Gamez*, 894 S.W.2d at 756.

It is undisputed that neither the parents nor the child is a party to this appeal, and the resolution by this Court of the issue of ad litem fees will not have any impact on them. However, it is also undisputed that, when the case settled, Dr. Jocson and the hospital agreed to pay the ad litem fees in the case. Furthermore, it is undisputed that they made this promise without any knowledge of the exact amount of the fees. In effect, the settlement agreement bound the defendants to pay Crabb's ad litem fees. Their dispute over the fees is, in essence, a contract dispute. Crabb is a party to this appeal not as an ad litem, but as a party to a contract.[4]

We overrule issue three and affirm the award of appellate fees.

### Conclusion

The guardian ad litem plays a vital and important role in ensuring a minor's interests are protected in the face of apparent conflict. Due to the wide latitude afforded the ad litem, there is potential for abuse. However, based on the record provided to us by appellants, we cannot say that the trial court abused its discretion in awarding the ad litem fees to Crabb.

We affirm the award of ad litem fees for work during trial and for the defense of the award on appeal.

4. Chapter 38 of the Civil Practice and Remedies Code generally provides that litigants may recover reasonable attorney's fees incurred in a valid claim based upon, among other things, an oral or written contract or for rendered services. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (Vernon 1997); *Grapevine Excavation, Inc. v. Maryland Lloyds*, 35 S.W.3d 1, 2 (Tex.2000).