COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS





FORD MOTOR COMPANY,

                                    Appellant,

v.

PATRICIA CHACON, INDIVIDUALLY
AND AS INDEPENDENT
ADMINISTRATOR AND PERSONAL
REPRESENTATIVE OF THE ESTATE
OF OSCAR CHACON, DECEASED,
OSCAR CHACON, SR., AND PATRICIA
CHACON AS NEXT FRIEND OF
VALERIE CHACON, MINOR,

                                    Appellees. 

§
 
§
 
§
 
§
 
§

§

§

§

§




No. 08-08-00173-CV

Appeal from
County Court at Law No. 6

of El Paso County, Texas

(TC #2005-5920)



 

 

 




O P I N I O N

            We consider today the propriety of a fee award to a guardian ad litem in a wrongful death and
survival action against Ford Motor Company and other defendants. Those claims were fully settled
and are not at issue here. On appeal, Ford challenges the $17,087 awarded to G. Daniel Mena, who
was appointed for the minor plaintiff. We reverse and render judgment for Mena in the amount of 
$10,562.50. 
FACTUAL SUMMARY
            This case arose from a tragic automobile accident involving a 1998 Ford Explorer that rolled
over on Interstate Highway 25 when the tread on the right rear tire separated. Oscar Chacon, a
passenger in the vehicle, sustained fatal injuries. His wife, Patricia Chacon, brought this wrongful
death and survival action against Ford Motor Company, Pirelli Tire Corporation, and Darrel Brown.


 
She sued individually, on behalf of her husband’s estate, and on behalf of their minor daughter,
Valerie Chacon. The lawsuit was assigned to the 120th District Court. Plaintiffs alleged products
liability claims against Ford and Pirelli Tire. They also alleged that the owner of the vehicle was
liable because he had negligently entrusted it to a “reckless driver” who was operating it at the time
of the accident. The decedent’s father, Oscar Chacon, Sr., later joined the lawsuit as an additional
plaintiff. 
            After the case had been on file almost a year, Plaintiffs informed the court that they had
reached a “tentative settlement” with Cooper Tire, against whom they were then asserting their
claims for the defective tire. In connection with that settlement, Plaintiffs requested the appointment
of a guardian ad litem for Valerie Chacon. The trial court promptly signed an order appointing Mena
to that role. The friendly suit hearing, severance, and judgment resolving those claims occurred in
October 2006. At that time, Mena was awarded a fee of $11,000 for serving as guardian ad litem
in connection with the Cooper settlement. 
            At the friendly suit hearing in the Cooper litigation, Ford tendered a settlement offer that
mirrored the terms of the Cooper settlement. According to Mena, Mrs. Chacon was not satisfied
with the offer and from that moment in the Ford litigation, her interests conflicted with those of her
daughter. The attorneys met in chambers with Judge Luis Aguilar, the then-presiding judge of the
120th District Court. In a “highly volatile” and emotional encounter, Judge Aguilar advised
Mrs. Chacon that she was foolish not to take the offer and that her decision was not in Valerie’s best
interest. The case was set for trial a few weeks later in November 2006, but it was continued at
Ford’s request. Having lost his re-election bid, Judge Aguilar left the bench at the end of December
2006. Because of concerns that the case would not proceed to trial for at least a year, the Ford
litigation was transferred from the 120th District Court to County Court at Law No. 6, Judge M. Sue
Kurita presiding. 
            In September 2007--ten days before the final trial setting--Judge Kurita denied Ford’s motion
for continuance and ordered mediation with regard to the Plaintiffs’ claims against Ford and Darrell
Brown. That mediation was successful, and the parties reached a settlement. Again acting as
guardian ad litem for Valerie, Mena submitted an ad litem report recommending the settlement. He
attached a document entitled “Billable Hours Mena Ad Litem-Chacon vs. Ford.” This document did
not indicate an hourly rate or the total amount Mena sought in attorney’s fees. But it listed time
entries totaling 87.25 hours, with additional time which would be incurred at attending the friendly
suit hearing and in handling the Order of Investment. The chronology of these time entries began
in August 2006. Ford asked for an evidentiary hearing. 
            On the morning of the hearing, Mena filed a verified Report of Hours that presented time
entries totaling 80.75 hours for which he sought compensation. The trial court awarded Mena fees
of $17,087. This appeal follows.
GUARDIAN AD LITEM FEES
            Ford brings four issues for review, complaining that the trial court abused its discretion by
awarding excessive guardian ad litem fees. We address each point in turn. 
Standard of Review
            A guardian ad litem must be appointed for a minor party when a conflict of interest
exists between the child and the child’s guardian or next friend. Tex.R.Civ.P. 173.2(a);
Brownsville-Valley Reg. Med. Ctr. v. Gamez, 894 S.W.2d 753, 755 (Tex. 1995). However, the
conflict need not be actual; potential for conflict during trial or settlement negotiations also
authorizes the appointment of a guardian ad litem. Borden, Inc. v. Martinez, 19 S.W.3d 469, 472
(Tex.App.--San Antonio 2000, no pet.); Clark v. McFerrin, 760 S.W.2d 822, 828 (Tex.App.--Corpus
Christi 1988, writ denied). Once appointed, the ad litem acts as both an officer and advisor to the
court. Tex.R.Civ.P. 173.4(a). When a settlement of the child’s claim is proposed, the guardian ad
litem has “the limited duty to determine and advise the court whether the settlement is in the party’s
best interest.” Tex.R.Civ.P. 173.4(c). As the personal representative of the minor, he may seek
reasonable compensation for necessary services performed. Tex.R.Civ.P. 173.6(a). “A reasonable
hourly rate multiplied by the number of hours spent performing necessary services within the
guardian ad litem’s role yields a reasonable fee.” Land Rover U.K., Ltd. v. Hinojosa, 210 S.W.3d
604, 608 (Tex. 2006)(per curiam). Because the guardian ad litem has a limited role, not all litigation
services are necessary or required. Id. at 607 (guardian ad litem may not recover fees for services
that duplicate work performed by plaintiff’s attorney); Brownsville-Valley Reg. Med. Ctr., 894
S.W.2d at 756-57 (guardian ad litem may not recover fees for services that duplicate duties imposed
on the trustee and the minor’s parents). “If a guardian ad litem performs work beyond the scope of
this role, such work is non-compensable.” Land Rover U.K., Ltd., 210 S.W.3d at 607. We review
a fee award under an abuse of discretion standard based on the sufficiency of the evidence that the
fee was reasonable and necessary. Id.; Garcia v. Martinez, 988 S.W.2d 219, 222 (Tex. 1999)(per
curiam). A trial court abuses its discretion in “ordering payment of a fee in excess of the product of
the hours spent and the hourly fee supported by the testimony using the Andersen factors.” Land
Rover U.K., Ltd., 210 S.W.3d at 608, referencing Arthur Andersen & Co. v. Perry Equip. Corp., 945
S.W.2d 812, 818 (Tex. 1997).
            The amount of the fee is left to the trial court’s discretion and will not be overturned absent
evidence that the trial court abused its discretion. Garcia, 988 S.W.2d at 222; Simon v. York Crane
& Rigging Co., 739 S.W.2d 793, 794 (Tex. 1987). To determine a reasonable fee, a trial court
applies the factors generally used to determine the reasonableness of attorney’s fees. Garcia, 988
S.W.2d at 222. These factors include:
(1) the time and labor required, the novelty and difficulty of the questions involved,
and the skill required to perform the legal service properly;
 
(2) the likelihood . . . that the acceptance of the particular employment will preclude
other employment by the lawyer;
 
(3) the fee customarily charged in the locality for similar legal services;
 
(4) the amount involved and the results obtained;
 
(5) the time limitations imposed by the client or by the circumstances;
 
(6) the nature and length of the professional relationship with the client;
 
(7) the experience, reputation, and ability of the lawyer or lawyers performing the
services; and
 
(8) whether the fee is fixed or contingent on results obtained or uncertainty of
collection before the legal services have been rendered.

Id., citing Arthur Andersen v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997), quoting Tex.
Disciplinary R. Prof’l Conduct 1.04, reprinted in Tex. Gov’t Code, tit. 2, subtit. G app. A
(Tex. State Bar R. art. X, § 9). To apply these factors, a reviewing court “may draw upon the
common knowledge of the justices and their experience as lawyers and judges to view the matter in
light of the evidence and the amount in controversy.” Borden, 19 S.W.3d at 471; see generally
Garcia, 988 S.W.2d at 219; Brownsville-Valley Reg. Med. Ctr., 894 S.W.2d at 753.
The Cooper Tire Settlement
            In Point of Error One, Ford complains that Mena’s time records included 38.00 hours
attributable to his services in connection with the Cooper Tire settlement. Ford maintains that Mena
was compensated for those services in 2006 when he recovered an $11,000 fee award. During the
hearing, Mena addressed the time entries involving both Cooper Tire and Ford. 
Q. All this time up until October 10th, 2006, for example, you had the hearing on the
judgment and severance order signed on October 10th, you have that exact same time
for Cooper Tire, don’t you?
 
A. I was also assuring myself that Ford Motor Company was not let out of this case,
yes, sir. The answer is yes.

. . .
 
Q. Everything that you have got from August until October 10th, 2006, you may be
billing to Ford but you did the same work for Cooper Tire?
 
A. I did some of the work simultaneously, sir, for the Defendant Ford, Defendant
Brown, and Defendant Cooper.
 
Q. I want you to go from all your billings from August 21st of 2006 to October 20th
2006, and tell me which were ones you never billed Cooper Tire for?
 
A. I couldn’t tell you. I don’t have that file. I told you. 

Judge Kurita explained that she would award Mena fees for all 80.25 hours submitted based on an
hourly rate of $350 per hour, except for two small entries totaling .50 hours. To solve the “double
billing” problem, the court then reduced the fee by $11,000 to account for what Mena had already
been paid:
THE COURT: I’m going to go ahead and award $350.00 for 80.25 hours. We are
deleting the point -- the time on the conference regarding ad litem fees, and we are
also giving credit for the $11,000 that was paid by Cooper Tire already so that there
is not an issue of double billing. And the amount that I have left is $17,087.00. 

It is thus clear that the trial court did not intend to award fees for the work Mena performed on the
Cooper Tire settlement. Instead, the court gave Ford a credit of $11,000. We overrule Point of Error
One. 
            We recognize, however, that because the trial court awarded fees at the rate of $350 per hour,
the $11,000 credit is insufficient. We readdress this portion of the argument in connection with our
analysis of Point of Error Four. 
Time Records for Period Between
Settlement with Cooper Tire and Ford Motor Mediation

            In Points of Errors Two and Three, Ford challenges the hours that Mena billed during the
year between the settlement with Cooper Tire and the mediation with Ford. Ford emphasizes that
there was no need for a guardian ad litem during that time because there was no pending settlement
offer. 
Services Rendered
            At the evidentiary hearing, Mena’s Report of Hours was admitted into evidence:
10-10-06         Motion to Quash and Review Release                                   .50
10-10-06         Motion for Summary Judgment                                             1.0 
10-16-06         Motion to Quash                                                                    .50 
10-17-06         Review Kennedy correspondence to Ms. Chacon                  .50 
10-18-06         Review Kennedy correspondence to Chambless                   .25 
10-18-06         Review court Notice of Setting                                              .25 
10-19-06         Motion Summary Judgment                                                   1.5 
10-20-06         Review Jeff Ray authorization settlement                              .25 
10-23-06         Review compel motion Dr. Juan Herrera                               .25 
10-25-06         Final pretrial                                                                           1.0
10-30-06         Motion hearing compel                                                          1.0 
11-01-06         Motion to strike witness                                                         1.0
11-01-06         Discussion with Judge on motion to transfer                         1.0
11-01-06         Discussion with Judge Kurita for acceptance of transfer       .50
 
12-05-06         Review Kurita order on trial setting                                       .25 
12-11-06         Review Prichard correspondence on pre-trial                        .25 
12-13-06         Review Notice of hearing status                                            .25 
1-08-07           Status hearing                                                                         2.0 
1-10-07           Review court order pre-trial order and charge                       .50 
1-22-07           Review and approval discovery control plan                         .50 
02-26-07         Review Prichard proposed Rule 11                                        .25 
02-28-07         Pro Hac Vice Order reviewed                                                .25 
03-08-07         Final pre-trial                                                                          1.5 
05-23-07         Review Jeff Ray correspondence on strike 
                        designated Witness                                                                 .25 
 
06-01-07         Review Prichard Notice of Deposition dates                         .25 
06-01-07         Review Ford Motion to Compel                                            .75 
06-09–07         Review Ford Reply to Response to Compel                          .50 
06-12-07         Motion to Compel                                                                  1.0 
06-14-07         Review Correspondence Prichard to Midlo                           .25 
06-15-07         Hearing on Independent Medical evaluation                         1.0 
06-19-07         Review Correspondence Ford expert deposition                   .25 
06-26-07         Review Jeff Ray correspondence to strike Shapley               .25 
06-28-07         Motion to strike witness                                                         1.0 
07-13-07         Review Prichard correspondence Rule 11                             .50
07-23-07         Review Karen Gold report                                                     1.5 
07-23-07         Review correspondence Prichard paralegal 
                        on Lee Deposition                                                                  .25
 
07-27-07         Review Notice of appearance additional counsel                  .50 
08-01-07         Review Chambless correspondence                                       .25 
08-23-07         Final pre-trial                                                                          2.0 
08-31-07         Review emergency motion for continuance                           1.5 
09-04-07         Review correspondence                                                         .25 
09-13-07         Review Ford Motor Motion to Strike designated
                        and compel trial deposition and summary 
                        judgment                                                                                2.0
                                                                                                                       29.50




The Rules

            Rule 173.4 of the Texas Rules of Civil Procedure outlines the role of a guardian ad litem: 
 
(a) Court Officer and Advisor. A guardian ad litem acts as an officer and advisor to
the court.
 
(b) Determination of Adverse Interest. A guardian ad litem must determine and
advise the court whether a party’s next friend or guardian has an interest adverse to
the party.
 
(c) When Settlement Proposed. When an offer has been made to settle the claim of
a party represented by a next friend or guardian, a guardian ad litem has the limited
duty to determine and advise the court whether the settlement is in the party’s best
interest.
 
(d) Participation in Litigation Limited. A guardian ad litem:
 
(1) may participate in mediation or a similar proceeding to attempt to reach
a settlement; 
 
(2) must participate in any proceeding before the court whose purpose is to
determine whether a party’s next friend or guardian has an interest adverse
to the party, or whether a settlement of the party’s claim is in the party’s best
interest; 
 
(3) must not participate in discovery, trial, or any other part of the litigation
unless: 
 
(A) further participation is necessary to protect the party’s interest
that is adverse to the next friend’s or guardian’s, and 
 
(B) the participation is directed by the court in a written order stating
sufficient reasons. 

Tex.R.Civ.P. 173.4. The comments to Rule 173 also address the ad litem’s responsibility: 
 
3. The rule contemplates that a guardian ad litem will be appointed when a party’s
next friend or guardian appears to have an interest adverse to the party because of the
division of settlement proceeds. In those situations, the responsibility of the guardian
ad litem as prescribed by the rule is very limited, and no reason exists for the
guardian ad litem to participate in the conduct of the litigation in any other way or to
review the discovery or the litigation file except to the limited extent that it may bear
on the division of settlement proceeds. See Jocson v. Crabb, 133 S.W.3d 268 (Tex.
2004)(per curiam). A guardian ad litem may, of course, choose to review the file or
attend proceedings when it is unnecessary, but the guardian ad litem may not be
compensated for unnecessary expenses or services. 
 
4. Only in extraordinary circumstances does the rule contemplate that a guardian ad
litem will have a broader role. Even then, the role is limited to determining whether
a party’s next friend or guardian has an interest adverse to the party that should be
considered by the court under Rule 44. In no event may a guardian ad litem supervise
or supplant the next friend or undertake to represent the party while serving as
guardian ad litem. 

Tex.R.Civ.P. 173.7 cmt 3, 4. 

Pertinent Authority

            We understand the historical controversy over hefty ad litem fees. For example, in Land
Rover U.K., Ltd., guardian ad litem Juan Hinojosa was awarded $100,000 for the work he performed
in his appointed capacity. 210 S.W.3d 604, 608 (Tex. 2006)(per curium). Hinjosa testified that he
talked to someone from the plaintiffs’ attorney’s office almost every day “to discuss strategy and
prepare for trial.” Specifically, he helped engineer a trial strategy to address the “empty chair” of
the settling defendant. Id. The court concluded that Hinojosa gave extensive advice to the plaintiffs’
attorney that was beyond the formal role of a guardian ad litem. Id. at 609. This included daily
consultations about trial strategy. Id. The court noted that even though the services may indeed have
benefitted the minor, they were within the duties of the attorney representing the minor in the
litigation and not additional fees to be assigned as costs payable to a guardian ad litem. Id., citing
Brownsville-Valley Reg. Med. Ctr., 894 S.W.2d at 756-57 (holding the guardian ad litem may not
recover fees for post-judgment services because they were not necessary to representing the minor
and they duplicated duties imposed on the trustee and the minor’s parents).
            Similarly, in Magna Donnelly Corp. v. DeLeon, the appellants argued that the trial court
abused its discretion by awarding the guardians ad litem compensation for tasks that were more
appropriately performed by the children’s attorney. 267 S.W.3d 108, 112 (Tex.App.--San Antonio,
2008, no pet.h.). One of the ad litems, Sylvia Rodriguez, testified that she spent approximately ten
hours locating and reviewing the “very, very lengthy file,” placing several calls to the plaintiffs’
attorney “to figure out what had happened,” and speaking with the other ad litems “regarding the rest
of the children.” Id. Rodriguez spent two hours with her client and his mother discussing “the
judgment, the motion to discover, and the effect of the release forms.” Id. Rodriguez explained
these matters to the mother, even though she knew the attorney already had, because it was her job
as an ad litem to make sure they understood. Id. A second ad litem, Grady Roberts, spent 12 to 15
total hours reviewing the “whole file,” including discovery, pleadings, and correspondence; talking
to the plaintiffs’ attorney or his office “a number of times;” discussing the matter with the other two
ad litems; and meeting with his client and her mother on one occasion for approximately one hour,
at which time he warned the minor about the hazards of spending her money quickly. Id. The court
concluded that the guardians ad litem took on tasks that were more appropriately performed by the
children’s attorney, thereby exceeding their limited roles. Id. In its analysis, the court criticized the
ad litems for spending a majority of their time obtaining and reviewing the “lengthy” case file. Id. 
Neither Rodriguez nor Roberts clarified exactly what was reviewed or why such an extensive review
was necessary when none of the minors had pending claims for personal injuries. Id. at 113. The
record did not reflect proof of particular legal services that were rendered to evaluate the propriety
and fairness of the proposed settlement. Id. The court concluded that the fees were improper
because the services rendered were either unnecessary or fell outside the scope of a guardian ad
litem’s role. Id. 
            And in Youngstown Area Jewish Federation v. Dunleavy, the Dallas Court of Appeals found
that the guardian ad litem, William Dunleavy, went beyond the scope of his duties. 223 S.W.3d 604,
609 (Tex.App.--Dallas 2007, no pet. h.). The record showed that Dunleavy traveled to SMU law
library to conduct research regarding Ohio law and reviewed case law provided by the minor’s
attorney. Id. He also billed for obtaining the minor’s medical records. Id. The court recognized
that an ad litem’s duties include evaluating and reviewing documents reflecting the damages suffered
by the minor for purposes of adequate settlement negotiations; however, the billing entries included
time for telephone calls and letters to obtain the records without any explanation of why such efforts
were necessary. Id. The court found these activities to be non-compensable because they were more
appropriate for the minor’s attorney. Id. at 610. The court remanded the case, ordering that the trial
compensate Dunleavy only for the tasks necessary to protect the minor’s interest and tasks that did
not duplicate the work more properly performed by the attorney. Id.
The Ad Litem Report
            We cannot review the propriety of the fee award without considering the ad litem’s
recommendation to the trial court. Mena prepared a six page report in which he noted that Valerie
Chacon suffered the loss of her father on her fifteenth birthday as she was planning her quincenera. 
She was first evaluated by a clinical psychologist in Edinburg, Texas, who diagnosed the child as
suffering from major depression with anxiety. Valerie was later evaluated by Dr. Karen Gold at
Ford’s behest. Mena reported that Valerie had become much more dependent upon her mother and
had attended every court hearing as well as meetings with psychologists, experts, and attorneys. She
looked to her mother for guidance in assessing the value of any potential settlement. The minor was
“candid in her assessments of her losses, very soft spoken, and . . . still burdened with the loss of her
father.” She was consoled by the presence of her father’s ashes in the living room and felt his
presence in her home every day. While she denied adjustment problems, she recognized that her
prolonged grief had created some social withdrawal. 
            Mena analyzed the settlement offer and weighed the risks of proceeding to trial. He
ultimately recommended that the trial court approve the settlement. Because the settlement required
a confidentiality agreement, the amount of recovery is not disclosed in the record.
The Trial Court’s Knowledge
            Because we must review the order for an abuse of discretion, we think Judge Kurita’s own 
knowledge of the conflicts of interest warrant mention. Because her procedural recitation is precise
and articulate, we quote it at length.
THE COURT: [Counsel] I think you are in a very bad disadvantage because you
came into the case at the friendly suit and did not follow this case from the inception. 
And I supposed [sic] that I am probably in the same position you were but not as bad
as you were since I took this case from the 120th. From the moment that I took this
case, it has been very contentious. It was very bad because the plaintiff at sometimes
indicated that she had no confidence not only in her own counsel, but in the entire
system. And it was represented at some of the pre-trial hearings and the status
conferences that she didn’t care if she got zero, that her position was that she was
going to make the individuals that she thought were responsible for her husband’s
death, at least -- well, she wanted justice for that. And she didn’t care if she was
zeroed out, but she wanted her day in court. That certainly was a terrible position for
the minor when there was an offer on the table. Because of the Cooper Tire
settlement, financially, the mother and the child had some financial security. And
that they were going to roll the dice and it came up with zero, the mother really didn’t
care. But she wanted to make sure, or at least she wanted to make sure, that she had
her day in court, and her husband had some justice, and she was out for blood. Not
necessarily money, but she wanted to hold Ford’s feet to the fire. I know that there
were attempts to settle and mediate this case on numerous occasions. And every time
they fell short usually [with] the plaintiff leaving the mediation, or at least indicating
that she had no confidence in the system, no confidence in the courts, no confidence
in the attorneys. And after her conversations with the judge of the 120th, who told
her that she was a fool not to settle, and that she was hurting the child, she had lost
confidence in the judiciary as well. It wasn’t until last summer with the efforts of
Mr. Mena, mainly, that Ms. Chacon was, I suppose her fears were soothed. She
became less emotional and more rational as to what was going to be in the best
interests of the child. The attendance by the ad litem at these hearings, I think, was
extremely important because it was critical as to what the outcome was eventually
going to be in the case.

Analysis
            The crux of the issue is when the conflict of interest arose between Mrs. Chacon and Valerie. 
Ford contends there was no conflict until there was a settlement offer on the table and that the
settlement did not arise until mediation on September 20, 2007. Yet the record clearly reveals
uncontradicted testimony that Ford tendered an offer on the date of the friendly suit in the Cooper
Tire litigation. We also have a vivid description of how Mrs. Chacon was confronted by Judge
Aguilar that very day and told that she was a fool if she did not accept the offer. She did not follow
his advice. Instead she stormed out of the conference and took a position that directly conflicted
with her daughter’s interest. She wanted blood, not money, even if that meant that Valerie received
nothing from Ford. Ford does not mention this first offer, or the volatile emotional cascade that
followed. This is the most glaring flaw in Ford’s argument.
            A second flaw relates to Dr. Karen Gold’s examination of Valerie. Mena noted in his report
that Dr. Gold evaluated the child at Ford’s request. Mena’s time records reveal that he reviewed
Dr. Gold’s written report on July 23, 2007 and billed 1.5 hours to the file. Ford does not want to pay
for these services because at the time Mena received the report, there was purportedly no settlement
offer on the table and no potential conflict of interest. Even if we were to discount the first offer and
Mrs. Chacon’s reaction to it, we are still left to ponder three questions. Should Mena have put aside
a psychological evaluation of his own client on the day he received it? If he had waited until the
mediation to read it, would Ford be willing to pay for it? How could he possibly recommend any
settlement until he knew the extent of the injuries--psychological or physical--that Valerie had
suffered? We cannot accept the line Ford wishes to draw in the sand.
            Of the disputed 42 time entries, 28 relate to reading pleadings and correspondence that were
routed to his desk. Although Ford does not suggest that he shouldn’t read his mail, it does argue that
fees for reading these documents are not compensable because there was no pending offer to settle. 
Of course, Mena would have no knowledge of what was contained in the envelopes until he opened
them. Nor would he be able to ascertain the significance of the contents to the representation of
Valerie until he read them. Given the conflict between Mrs. Chacon’s scorched earth strategy and
Valerie’s interests, Mena quite properly monitored the status hearings. Over time, Mrs. Chacon did
come to trust Mena and it was his concerted effort to reassure her that led to a successful conclusion
of the litigation. 
            The Plaintiffs’ legal team apparently had difficulty keeping and controlling their client. Yet
Mena did not jump in to take over as counsel, nor do his time records reveal daily consultations
about trial strategy. See Land Rover U.K., Ltd., 210 S.W.3d at 608. For each entry, Mena specified
exactly what he was reviewing. Magna Donnelly Corp., 267 S.W.3d at 112. There was no
affirmative testimony of duplicative work already performed by the attorney. Id. Nor did Mena bill
for his own legal research. Youngstown Area Jewish Federation, 223 S.W.3d at 609. He did not
conduct his own discovery. But he properly monitored the hostile relationships, particularly since
Valerie was becoming more and more dependent on her mother for settlement advice while Mrs.
Chacon grew more and more willing to roll the dice.
            Two time entries reflect conversations with Judge Kurita. The final twelve entries relate to
attendance at court hearings. At the evidentiary hearing, Judge Kurita explained that she encourages
attendance of the guardian ad litem at proceedings that impact the minor, including attendance at 
pretrial or scheduling conferences. She then distinguished participation from attendance:
 
THE COURT: Participation and attendance are two different things. I think it is
important for an ad litem if he is going to be looking out for what is in the best
interest of the child to be present and to be aware of what’s going on. Participating,
asking questions, and doing that, that’s certainly another thing.

Bearing in mind that we apply an abuse of discretion standard of review, we conclude that the
services rendered fell within the scope of the guardian ad litem’s duties and are compensable. We
overrule Points of Error Two and Three.
Hourly Rate
            In Point of Error Four, Ford complains that the trial court compensated Mena at an hourly
rate greatly in excess of what the evidence will support. Here, the trial court awarded fees at the rate
of $350 per hour. At the evidentiary hearing, Mena testified that a reasonable fee for his services
would be between $200 to $250 per hour. Ford’s counsel testified that a reasonable hourly rate
would be between $150 to $200 per hour. 
Time Incurred After Ford’s Final Settlement Offer
            Mena’s Report of Hours contains the following time entries:
09-13-07         Correspondence lawyers on mediation                      .50
09-16-07         Confer client                                                               2.0
09-20-07         Mediation                                                                   5.5
09-20-07         Conference with court on settlement                          .25
09-21-07         Conference with court on mediation agreement        1.0
10-04-07         Conference on Friendly suit                                       .50
10-06-07         Phone Ray-Ad Litem fees                                          .25
10-09-07         Phone Ray-Ad Litem fees                                          .25
10-10-09         Review Ray correspondence                                      .25
10-11-07         Review settlement                                                      .25
10-11-07         Report to Court                                                         1.5
10-12-07         Friendly suit                                                               pending
10-12-07         Order of Investment                                                   pending 
 
Ford does not  challenge the compensability of the services rendered.

The Trial Court’s Calculations
 
THE COURT: Bear with me for just a moment. I’m going to go ahead and award
$350.00 for 80.25 hours. We are deleting the point -- the time on the conference
regarding ad litem fees, and we are also giving credit for the $11,000 that was paid
by Cooper Tire already so that there is not an issue of double billing. And the
amount that I have left is $17,087.00. 

Because we find nothing in the record to support the $350 hourly rate, we sustain Point of Error
Four. This not only affects the fees charged to Ford for compensable services, it impacts the double
billing credit. Because the trial court awarded fees at the rate of $350 per hour, the 38 hours billed
to Cooper Tire would total $13,300. Thus, Ford has been charged $2,300 for work that was
originally billed to Cooper Tire. 
Reformation of Judgment
            When reversing a trial court’s judgment, we must render the judgment that the trial court
should have rendered unless a remand is necessary for further proceedings or in the interest of
justice. Tex.R.App.P. 43.3. An additional evidentiary hearing is not required. Judge Kurita
intended to compensate Mena for 80.25 billable hours. Ford is entitled to a credit for the 38 hours
attributable to the Cooper Tire Settlement, leaving 42.25 compensable hours. Ford concedes that 

the evidence supports an hourly rate of $250. We thus render judgment for Mena in the amount of 
$10,562.50. 

May 19, 2010                                                              
                                                                                    ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Rivera, JJ.